# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

***MARK | LAVIGNE, LLC***
675 Morris Avenue, Suite 300
Springfield, New Jersey 07081
T: (973) 845-6606 (Main)
Jamison M. Mark, Esq. (042392000)
jmark@newjerseyattorneys.com
Edward J. Herban, Esq. (038561998)
Eherban@newjerseyattorneys.com
*Attorneys for Plaintiff Rachel Pruchno*

| | |
|---|---|
| **RACHEL PRUCHNO**, <br><br> Plaintiff, <br><br> v. <br><br> **ROWAN UNIVERSITY** *a/k/a Rowan-Virtua School of Osteopathic Medicine*; **KEITH BURKHARDT, THOMAS CAVALIERI, RICHARD JERMYN, ANTHONY LOWMAN, HENRY OH, KEVIN OVERBECK, ABC COMPANIES 1-10; JOHN and JANE DOES 1-10,** <br><br> Defendants. | Hon. Edward S. Kiel, U.S.D.J. <br><br> Case No. 1:24-cv-06619 <br><br> **THIRD AMENDED COMPLAINT & JURY DEMAND** |

## THIRD AMENDED COMPLAINT

Rachel Pruchno, by and through her attorneys, Mark | Lavigne, LLC, does hereby complain and allege against Defendants., by way of this 3rd Amended Complaint, as follows:

## PARTIES

1.     **Rachel Pruchno,** (hereinafter "Dr. Pruchno" or "Plaintiff") is an employee of Defendant Rowan University, and currently holds the title of Professor of Medicine**.**  Dr. Pruchno is a citizen of Florida, and resident of the Municipality of Clearwater, in the County of Pinellas.

2.      **Rowan University** (hereinafter "Rowan" or "University") is a State University and has been, at all relevant times, Plaintiff's employer.   Rowan University maintained a public medical school located in the Borough of Stratford, County of Camden, State of New Jersey, known as the Rowan-Virtua School of Osteopathic Medicine, which is where Plaintiff Pruchno is employed.

3.      **Keith Burkhardt,** Human Resources Manager, and was the highest-level human resources employee at the School of Medicine, was in charge of compliance with University policies and procedures. Mr. Burkhardt was considered a supervisor and/or upper management of the University, had the ability to hire, fire, and demote Plaintiff, and had oversight, authority and was sought in personnel decisions.

4.      **Thomas Cavalieri, D.O.**, Dean of the School of Medicine from 2006 until February 2023.  Cavalieri was involved in the initial decision and plan to demote Plaintiff due to her age and was considered a supervisor and/or upper management of the University, and had the ability to hire, fire, and demote Plaintiff, and had University oversight authority in its personnel decisions.

5.      **Richard Jermyn, D.O**., Interim Dean of the School of Medicine from February 2023 until April 2024, and then became Dean in April 2024. Jermyn was and remains a supervisor and/or upper management of the University, had the ability to hire, fire, and demote Plaintiff, and had University oversight authority in its personnel decisions. Jermyn was Interim Dean in June 2023, a decision maker to demote Plaintiff, and he attended the meeting at which Dr. Pruchno  was told of the demotion.

6.      **Anthony Lowman, Ph.D.,** Provost, Rowan University, Lowman is Provost and ultimate decision maker for Rowan University regarding personnel issues. He was and remains a

supervisor and/or upper management of the University, had the ability to hire, fire, and demote Plaintiff, and had University oversight authority in its personnel decisions. Lowman tried to cover up the University illegal conduct, when he offered Plaintiff a 6-month sabbatical at her correct salary but demanded that Plaintiff sign a 4-page non-disclosure agreement.

7.     **Henry Oh,** Associate Vice President of Human Resources - Talent and Employee Management. Oh, provided HR guidance at the June 19, 2023, meeting wherein Plaintiff was demoted, and her salary was cut. Oh, failed to ensure that University personnel followed Rowan policies and procedures.

8.     **Kevin Overbeck,** D.O., Chair NJISA As Chair. Overbeck was a supervisor and/or upper management of the University, had the ability to hire, fire, and demote Plaintiff, and had University oversight authority in its personnel decisions. Overbeck was Plaintiff's department Chair and clearly a decision maker to demote Plaintiff.

9.     **ABC Companies 1-10,** at all times mentioned herein, are companies, entities and/or arms of the State, are responsible for employing certain John and Jane Does 1-10, who caused or contributed to Plaintiff Rachel Pruchno's unlawful demotion, and who identity/identities will be revealed through the continued course of discovery.

10.     **John and Jane Does 1-10**, who at all times material to this Complaint, individual Defendants and actors of Rowan, management and upper management that were involved in the discrimination against Plaintiff, or failed to take action to prevent the discrimination, failed to adequately train, monitor or enforce any policy that existed, as well as unknown employees (John and Jane Does) who acted under color of law on behalf the Defendant University.

11.     **ABC Companies 1-10,** are yet known and fictitious names for legal corporations, companies, entities, bodies, or otherwise, that were Plaintiff's employer(s), her supervisor(s)

and/or other legal entities who were involved in the allegations herein and violated Plaintiff's rights and/or aiding and abetting the Defendants, John and Jane Does 1-10 10 and other ABC Companies 1-10, and are unknown at the time of the filing of this Complaint. These individual Defendants engaged in illegal conduct against Plaintiff and/or discriminated against and/or engaged in and/or created a hostile work environment for Plaintiff, and/or conspired to engage in and/or create such conduct and/or environment and are responsible to Plaintiff as an employer and/or an aider and/or abettor for claims set forth herein.

## VENUE

12.     Venue properly lies in Camden County, New Jersey because Plaintiff's cause of action arose in Camden County.

## FACTS COMMON TO ALL COUNTS

13.     On April 7, 2004, Plaintiff Dr. Rachel Pruchno received an offer letter from University of Medicine and Dentistry of New Jersey, School of Osteopathic Medicine (now Rowan University) for the position of Director of Research for the Center for Aging (now, the New Jersey Institute for Successful Aging [NJISA] at Rowan-Virtua). The position included tenure in the Department of Medicine.

14.     Dr. Pruchno received a contract for her employment with Rowan University, which identifies her as responsible for developing, overseeing, and maintaining a schoolwide program on research in the field of aging.

15.     Dr. Pruchno's contract did not include any specified language or expectation, nor was it ever negotiated that as part of her responsibilities as Director of Research for the Center for Aging she was to have "grant writing" responsibilities.

16.     Dr. Pruchno received repeated reviews that documented that she had exceeded her goals and received financial raises each year due to excellent work.

17.     Since her hire, Dr. Pruchno has enjoyed an extremely productive career. She was Principal Investigator on several grants that she secured, most of which were funded by the National Institutes of Health, for over six-million dollars. Dr. Pruchno has published over 150 top-tier peer review journal articles, was named one of the top five scholars at Rowan University and served as the longest-running Editor-in-Chief of The Gerontologist, a major journal in her field.

18.     The grants that Dr. Pruchno had been writing take several years to fund and have a ten to fifteen-year lifespan.

19.     In January 2019, at the age of 65, decided that *because of her advanced age,* it would be prudent for her and Defendants to plan for her succession because she would be retiring in the not-too-distant future.

20.      Because of Dr. Pruchno's imminent retirement due to her age and the length of the grant writing process, she believed that it would be prudent to hire a successor for Dr. Pruchno to train to take over the grant writing once Dr. Pruchno retires.

21.     Dr. Pruchno called a meeting with Dean Cavalieri and Anita Chopra, M.D., (then NJISA Chair) to discuss plans for developing future NIH-grants.

22.     During said meeting, Dr. Pruchno explained to Drs. Cavalieri and Chopra that she would be happy to continue writing grants but that a succession plan was necessary because her advanced age meant she would likely not be working for the University during the full duration of any new grants that she wrote.

23.     Dr. Cavalieri advised Dr. Pruchno that the University did not have the budget to hire someone to work alongside her for purposes of succession, and that he also would not continue

to support the ORANJ BOWL, a panel built by Dr. Pruchno, and funded through 2020 with grant funds.

24.     Dr. Cavalier's decisions led Dr. Pruchno and Dr. Chopra to jointly develop a work plan that focused primarily on Dr. Pruchno writing scholarly papers based on existing ORANJ BOWL data, developing a book about successful aging, and supporting grant writing activities of Rowan faculty interested in aging.

25.     Dr. Pruchno followed the work plan. When an opportunity arose, she submitted an NIH grant about the effects of Covid on older people in June 2021. This demonstrates her willingness to continue writing grants, as she hoped her efforts would convince Cavalieri to reconsider developing a succession plan. The project was not funded and Cavalieri did not provide resources for succession. Dr. Pruchno continued to follow the workplan developed in conjunction with Chopra, writing papers based on ORANJ BOWL, and developing a book about successful aging.

26.     Dr. Chopra retired in 2021, and Kevin Overbeck became the Department of Geriatrics & Gerontology Chair (previously NJISA).

27.     Immediately, Chair Overbeck questioned Dr. Pruchno and asked her why she was not writing grants any longer.  Dr. Pruchno informed Chair Overbeck of the January 2019 meeting with Dr. Chopra and Dr. Cavalieri, and that because of her advanced age a decision had been reached that she would no longer write grants, and that she was never responsible for writing grants in her role as Director of Research.

28.     Dr. Pruchno told Overbeck that if a succession plan could be developed, she would continue writing grant proposals as she did prior to the January 2019 work plan. Overbeck was not

able to secure the resources to do so. Pruchno also told Overbeck that grant writing was not, and never had been, a part of her job description as Director of Research.

29.     In or around the Fall 2022 semester, Chair Overbeck provided a favorable annual performance review, and agreed in writing to the 2019 workplan established between Dr. Pruchno and then-Department Chair Dr. Chopra.

30.     A few months later, on June 19, 2023, Dr. Pruchno was called into a meeting with Chair Overbeck, Interim Dean of Rowan-Virtua School of Osteopathic Medicine Richard Jermyn, Associate Vice President of Human Resources Henry Oh, and Keith Burkhardt where she was stripped of her title as Director of Research for the New Jersey Institute for Successful Aging/ Professor of Medicine, and told that her Director of Research title would be eliminated, and would be given the new title of Professor of Basic Science.

31.     During said meeting, Dr. Pruchno was told that her salary would be unilaterally reduced by more than 30% in connection with this change.

32.     The 30% salary cut was imposed upon Dr. Pruchno with only 11 days' notice, and thereby caused considerable disruption and hardship in her life.

33.     Dr. Pruchno was then advised that all of the above would become effective July 1, 2023.

34.     Dr. Pruchno was told that it had been decided by Interim Dean Jermyn that there was no need to continue with the Director of Research position because Dr. Pruchno would no longer be applying for grants, despite the fact that grant writing had never been a part of her job description for Director of Research.

35. Dr. Pruchno informed the University that she was not writing the grants to the extent she had been before the 2019 work plan because the university had not committed to a succession plan, that she had proposed due to her advanced age and imminent retirement.

36. The University chose this particular reason, that the University previously recognized as being tied to Dr. Pruchno's age, in order to discriminate against Plaintiff because of her age.

37. Dr. Pruchno also explained that her contract did not identify that applying for grants would be part of her job, and it had never been a condition of her job prior.

38. Thereafter, despite the loss of title and reduction in salary, Dr. Pruchno continued to adhere to the work plan established by Chair Chopra and agreed to by Chair Overbeck and continued to research grants.

39. Dr. Pruchno received a letter dated June 19, 2023, from Interim Dean Jermyn, and VP of Human Resources Oh, memorializing Dr. Pruchno's reduction in pay and change in title.

40. Since her demotion and pay reduction, on July 19, 2023, Dr. Pruchno was called into a meeting with Chair Overbeck and Director of Human Resources Keith Burkhardt to discuss the workplan associated with her new role and asked her to develop "a work plan" for them to consider.

41. Despite providing the "workplan" later that same day, neither Chair Overbeck nor human resources responded to Dr. Pruchno. As such, Dr. Pruchno continued adhering to the work plan established by Chopra and agreed to by Overbeck.

42. On June 22, 2023, Dr. Pruchno's then attorney sent a letter to Dean Jermyn complaining about the University's negative job actions taken against Dr. Pruchno.

43.     Dr. Pruchno also complained about the unilateral demotion and salary reduction, which she believed stemmed from her alerting the University that she would soon retire due to her age. With AAUP President Roger Johansen, Dr. Pruchno met with Rowan University Provost Anthony Lowman at the beginning of September 2023. Provost Lowman said he was not aware of the demotion and said he was surprised by the decision to get rid of a Director of Research who had been so successful, especially given his goal of developing Rowan University into an R1 university. Provost Lowman asked Dr. Pruchno who had made this decision. Dr. Pruchno said she did not know. Provost Lowman said he would talk with Chair Overbeck and Interim Dean Jermyn and promised to resolve the problem in a few weeks.

44.     At the end of October, Provost Lowman sent Dr. Pruchno a letter offering her a "6-month sabbatical" (from June 2023 through December 2023), delaying the reduction of her salary until January 1, 2024.

45.     In order for Dr. Pruchno to consider the offer, however, she would have to sign a full waiver and release of any age-related claims that she might have against Rowan University.

46.     This accommodation is a tacit admission that the Defendants knew their conduct was discriminatory because of Dr. Pruchno's age.

47.     Dr. Pruchno did not sign the Provost's offer.

48.     On November 1, 2023, on behalf of Plaintiff, the AAUP filed a grievance against the University for breach of contract.   This filing of the grievance is a protected act pursuant to the New Jersey Conscientious Employee Protection Act, *N.J.S.A. § 34:19-1 et seq.* as protections are afforded under the New Jersey State Constitution and National Labor Relations Act.

49.     Defendants insisted on Dr. Pruchno's physical attendance at her AAUP grievance hearings. Many such hearings are attended by virtual appearance for others, but knowing that she

resides in Florida and it would be a tremendous financial hardship upon Dr. Pruchno to travel to NJ, the University insisted on in-person hearings.  Despite the clear acts of retaliation, Dr. Pruchno traveled to NJ and did attend the grievance hearing.

50.    On November 17, 2023, Dr. Pruchno filed an age discrimination complaint with the NJ DCR and the US EEOC.  These are protected acts under the New Jersey Conscientious Employee Protection Act, *N.J.S.A. § 34:19-1 et seq.*

51.    After Dr. Pruchno refused the sabbatical, filed a grievance and verified complaint with the NJ DCR and the US EEOC, and knowing that it had illegally treated Dr. Pruchno based upon age, by letter dated November 20, 2023, Rowan University and Dr. Lowman authorized backpay for the period of July 1, 2023 through November 30, 2023, as a "one-time payment for four-months' notice at a manager's rate" prior to the 30% reduced salary taking affect.

52.    By letter dated November 20, 2023, the University persisted in its decision that Dr. Pruchno's services with respect to her managerial role of Director of Research for the New Jersey Institute for Successful Aging were no longer needed and ended her role as Director of Research effective June 30, 2023.

53.    In December 2023, in further retaliation because of her complaints of discrimination, and to humiliate Dr. Pruchno even further, Defendants removed Dr. Pruchno from her office and confiscated her ergonomic furniture., Defendants relocated Plaintiff's office into a storage closet – the space had no windows or vents. Her furniture was replaced with a single, old desk; her files and books were stuffed into the storage office.

54.    In response to Defendants' humiliation of Plaintiff, Plaintiff informed Defendants that she would work from home and Defendants agreed.

55.     Rowan hired movers to load Dr. Pruchno's books and files into her husband's car. She has been working at home since that time.

56.     Despite her contract not providing for "grant writing" as part of her responsibilities, and/or there being no obligation to write any particular number or type of grants, Plaintiff was demoted due to a pretextual reason that she was unable to apply for grants.

57.     In reality, the reason she was demoted was due to her age.

58.     Despite being told that Rowan would not support a succession plan and would not provide other resources that would enable her to write competitive grant proposals, it is now 2024, and Dr. Pruchno is still employed with the University. She continues to follow the work plan established with her previous chair and agreed to by the current chair.

59.     On May 29, 2024, Plaintiff filed a Law Suit against Rowan University, Keith Buckhardt, Thomas Cavalieri, Richard Jerrmyn, Anthony Lowman, Henry Oh, and Kevin Overbeck in New Jersey Superior Court alleging Age Discrimination, and amended on May 30, 2024 to include an additional allegation of Retaliation in violation of the NJ Law Against Discrimination (N.J.S.A. §10:5-1, et seq.).   The Amended Complaint was served upon the University on or about May 30, 2024.

60.     In August 2024, Defendants sent a letter to Dr. Pruchno detailing her responsibilities for the 2024-2025 academic year.  In retaliation for her prior complaints, and filing said Amended Complaint, the University changed her responsibilities to include: (1) continuing her research (2) working with students, and then adding (3) teaching an in-person problem-based learning class to medical students.

61.     Defendants are fully cognizant that Dr. Pruchno does not have the qualifications to teach the problem-based course, nor was this her responsibility before filing the Amended

Complaint.  In fact, Dr. Purchno had never taught this in-person problem-based learning class to medical students before.

62.    Dr. Pruchno agreed to undertake the continuation of her research and working with students, however, but informed Defendants that, as a psychologist, she believed, and still believes, that it would be unethical for her to teach a clinical class to medical students.

63.    On September 4, 2024, the University, through its Labor Relations Director Adam Verone, sent Plaintiff a letter charging her with discipline for job abandonment.  In said letter, the University threated that "***The University has no realistic choice but to seek the termination of your employment***."

64.    The disciplinary charges and threat of termination of Plaintiff's employment are Defendants' clear continuances of the discrimination and retaliation against Dr. Pruchno.

65.    Thereafter, AAUP filed another grievance on behalf of Dr. Pruchno in response to the disciplinary charges seeking her termination as filed by Defendants. The filing of this grievance is a protected act pursuant to the New Jersey Conscientious Employee Protection Act, *N.J.S.A. § 34:19-1 et seq.* as protections are afforded under the New Jersey State Constitution and National Labor Relations Act.

66.    Defendants insisted on Dr. Pruchno's physical attendance at her AAUP grievance hearings. Once again, despite requesting her attendance be handled remotely, as many such hearings are attended virtually, because she resides in Florida (and because of her underlying complaints) and to make her life even more difficult, and it would be a tremendous financial hardship upon Dr. Pruchno, the University required her to travel to NJ for the hearings.  This hearing has been put off as of the fling of this 3rd Amended Complaint.

67.     The disciplinary charges were filed clearly in furtherance of Defendants' scheme to terminate Plaintiff's employment because of her age, to retaliate against her because she complained about Defendants' discriminatory conduct, because she opposed what she reasonably believed would be unethical acts committed by the University (teaching a clinical class without proper qualifications), and the filing of this lawsuit, and her grievances.

68.     On November 22, 2024, a hearing was conducted with the AAUP and HR regarding the  University's job abandonment charges.

69.     On December 9, 2024, to no one's surprise, Defendants' own hearing officer summarily conclude that Plaintiff abandoned her job.

70.     On December 20, 2024, in further retaliation of Dr. Pruchno's complaints of age discrimination, filing of this lawsuit, and complaining about age discrimination, opposing unethical acts, knowing it would be devastating to Plaintiff's professional career, Defendants blocked Plaintiff's access to her University email account.

71.     Denying Dr. Pruchno access to her email account is tantamount to further deliberate retaliation because (1) when Dr. Pruchno was hired by Defendants, she was informed that it was University policy that faculty retain lifelong access to his/her University e-mail account; (2) Dr. Pruchno used that particular email address for approximately 20 years in her professional career; (3) the University did not enable any automatic notice that Dr. Pruchno was unreachable at the University email address, which has the effect of disrupting Dr. Pruchno's research efforts on her current projects and immediately did cut her off from her professional community.

72.     Ironically, knowing she had been cut off from its use, on December 23, 2024, Defendants sent Dr. Pruchno a letter to her University email terminating her employment effective

December 20, 2024. This act further delayed notification to Dr. Pruchno of her termination from Rowan University.

73.    Moreover, in addition to sending its Termination Notice to a turned-off email, Defendants also failed to provide critical information regarding COBRA benefits, vacation pay, laptop return, etc.

74.    Thereafter, in January 2025, the AAUP filed a 3rd grievance against Defendants because Defendants have unilaterally decided to terminate Plaintiff's employment.

75.    On January 21, 2025, Dr. Pruchno learned that in conjunction with Defendants' decision to retaliate against her by terminating her employment, Defendants further retaliated against her by suspending Dr. Pruchno without pay during the pendency of her latest grievance to be heard.

76.    Suspending Dr. Pruchno without pay is in violation of the AAUP contract to which Plaintiff and Defendants are parties.

77.    Suspending Dr. Pruchno without pay had the effect of leaving her without University supplied income or health benefits while simultaneously barring Dr. Pruchno from accessing her TIAA retirement funds for income and from applying to obtain Medicare healthcare benefits.

78.    On or about January 29, 2025, Defendant Verona delayed the completion of Dr. Pruchno's Medicare enrollment form, which delayed her access to healthcare benefits in further retaliation to Dr. Pruchno protected activities.

## COUNT I

### *(New Jersey Law Against Discrimination)*
### *(N.J.S.A. § 10:5-12(a) et seq. – Age)*

79.     Plaintiff hereby repeats and realleges each of the above-mentioned allegations in paragraphs 1 through 78 as if fully set forth herein.

80.     Dr. Pruchno falls within the protected class of employees pursuant to N.J.S.A. §10:5-1 et seq., as, during the relevant period, she was sixty-nine (69) years of age at the time of the discrimination, to wit, loss of title, demotion, removal of responsibilities, and pay reduction.

81.     During all times relevant to this cause of action, Defendant Rowan is an "employer" as defined by the LAD, N.J.S.A. §10:5-5(a) and (c).

82.     During all times relevant to this cause of action, Dr. Pruchno is a "person" and "employee" as those terms are defined by the LAD, N.J.S.A. §10:5-5(a) and (f).

83.     Dr. Pruchno was qualified for her position, yet, because of her age, she was demoted and lost more than 30% of her salary.

84.     The discrimination complained of in the above allegations was based upon Plaintiff's advanced age.

85.     Defendants Rowan targeted Dr. Pruchno, who was able to perform her job responsibilities without issues, by removing her title and eliminating her position while also substantially reducing her pay.

86.     The proposed reason for demoting Dr. Pruchno and stripping her of pay was pretext and known to Defendants to be discriminatory against Plaintiff because of her age.

87.     Said acts of discrimination would not have occurred but for Dr. Pruchno's age.

88.     The aforesaid conduct of the Defendants constitutes actionable age discrimination in violation of the LAD, N.J.S.A. §10:5-4.1 et seq.

89.    As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of the New Jersey Law Against Discrimination, Plaintiff has suffered and continues to suffer financial and economic damages as well as mental anguish and emotional distress, including but not limited to, anxiety, humiliation, embarrassment, stress, loss of self-esteem and self-confidence, and emotional pain and suffering.

90.    Defendants' unlawful discriminatory conduct constitutes a willful and wanton violation of the New Jersey Law Against Discrimination, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## COUNT II

### (New Jersey Law Against Discrimination (N.J.S.A. §10:5-12(d) et seq.)- Retaliation Before Defendants Terminate Plaintiff's Employment)

91.    Plaintiff hereby repeats and realleges each of the above-mentioned allegations in paragraphs 1 through 90 as if fully set forth herein.

92.    After Plaintiff complained of the illegal actions of Defendants insofar as illegal age discrimination, submitting complaints and filing with the EEOC/DCR she was the subject of direct retaliation.

93.    Further, Defendants as a direct result of her complaint to the Provost offered Plaintiff a release agreement which tacitly acknowledges Defendants' wrongful conduct.

94.    Due to her complaints of illegal discrimination, and her refusal to accept Defendants' offer to settle her complaints, Defendant further retaliated against Plaintiff by evicting Plaintiff from her usual office location, moving her to a storage closet office, confiscating her personal belongings, office furniture, and her ergonomic chair.

95.    Defendants and their agents and/or employee's unlawful conduct constitutes retaliation under the NJLAD.

96.    Defendants' conduct was done so as a willful and wanton violation of the New Jersey Law Against Discrimination ("NJLAD"), was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

97.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New Jersey Law Against Discrimination, Plaintiff has suffered and continues to suffer irreparable harm in the form of severe emotional distress including but not limited to, anxiety, panic, humiliation, embarrassment, stress, loss of self-esteem and self-confidence, anguish, personal hardship, career and social disruption, psychological and emotional harm, economic and financial damages, loss of employment opportunities, and other such harms and damages.

## COUNT III

*(New Jersey Law Against Discrimination (N.J.S.A. §10:5-12(d) et seq.)-*
*Retaliation- Defendants Terminate Plaintiff's Employment, Harm Her Professional Identity,*
*and Interfere with her Attempts to Mitigate her Damages)*

98.    Plaintiff hereby repeats and realleges each of the above-mentioned allegations in paragraphs 1 through 97 as if fully set forth herein.

99.    After Plaintiff complained of the illegal actions of Defendants insofar as illegal age discrimination, submitting complaints and filing with the EEOC/DCR, filing her lawsuit, grieving adverse employment actions, she was the subject of continued direct retaliation.

100.    Due to her complaints of illegal discrimination, and her refusal to accept Defendants' offer to settle her complaints, Defendant further retaliated against Plaintiff by foisting

an unethical workplan on her, then terminating her employment because she refused to engage in what she reasonably believed was unethical behavior, even after terminating her employment, Defendants treated Dr. Pruchno differently than others by not agreeing to pay her while her grievances were pending- this last act is in violation of the AAUP contract,

101.    Defendants and their agents and/or employee's unlawful conduct constitutes further retaliation under the NJLAD.

102.    Defendants' conduct was done so as a willful and wanton violation of the New Jersey Law Against Discrimination ("NJLAD"), was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

103.    Defendants' adverse employment actions and harassment against Plaintiff was and is without any legitimate and/or lawful purpose.  Any purported rationale for Defendants' adverse employment actions would be pre-textual and advanced to mask Defendants' retaliatory intent.

104.    As a result, Plaintiff's statutory rights have been violated and her protections under the law have been eviscerated. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New Jersey Law Against Discrimination, Plaintiff has suffered and continues to suffer irreparable harm in the form of severe emotional distress including but not limited to, anxiety, panic, humiliation, embarrassment, stress, loss of self-esteem and self-confidence, anguish, personal hardship, career and social disruption, psychological and emotional harm, economic and financial damages, loss of employment opportunities, and other such harms and damages.

## COUNT IV

### *(New Jersey Conscientious Employee Protection Act (N.J.S.A. § 34:19-1 et seq) - Retaliation)*

105.    Plaintiff hereby repeats and realleges each of the above-mentioned allegations in paragraphs 1 through 107 as if fully set forth herein.

106.    Defendants' actions against Plaintiff, including, but not limited to bringing false charges of insubordination, terminating Plaintiff's employment, removing her lifetime email access, suspending her without pay, and deliberately interfering with her ability to access her income and health benefits, as outlined above, among other things are in retaliation for Plaintiff's whistle-blowing activities described herein, in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 et seq.

107.    Plaintiff engaged in "whistle-blowing" activities in that she objected to Defendant's improper conduct which she reasonably believed was  incompatible with a clear mandate of public policy concerning ethics or professional conduct  in violation of law and/or public policy, and/or rules or regulations promulgated pursuant to law and/or rules, and/or was fraudulent, and/or negatively impacted the health, safety and welfare of the public.  In retaliation for her whistle-blowing activities, Plaintiff suffered adverse employment action(s) and other retaliatory and harassing acts at the hands of Defendants, as outlined above.

108.    Plaintiff filed multiple AAUP grievances and objected that the 2024-2025 workplan Defendants forced upon her would be unethical in that she was unqualified to teach a clinical class to prospective medical professionals in that providing unqualified training  to prospective medical will negatively impact public health and safety of the state.

109.    In response to Plaintiff's grievances, complaint and refusal to engage in what she reasonably believed was the unethical behavior, Defendants' brought pretextual charges of

insubordination, ultimately and terminated Plaintiff's employment for same. Defendants also exacerbated the injury of terminating Plaintiff's employment as described above.

110. The adverse employment actions described above were preplanned by Defendants and were the expected result of Defendants plan to terminate Plaintiff's employment for complaining about age discrimination. That is, Defendants foisted the unethical 2024-2025 workplan upon Plaintiff with the full expectation that she would oppose it so that Defendants could claim that they had a legitimate reason to terminate her employment.

111. Defendant created and maintained a hostile work environment against Plaintiff in retaliation for her whistle-blowing activities.

112. Defendants' adverse employment actions and harassment against Plaintiff was and is without any legitimate and/or lawful purpose.  Any purported rationale for Defendants' adverse employment actions would be pre-textual and advanced to mask Defendants' retaliatory intent.

113. Defendant's harassing and retaliatory actions against Plaintiff constitute violations of CEPA.

114. As a result, Plaintiff's statutory rights have been violated and her protections under the law have been eviscerated. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New Jersey Conscientious Employee Protection Act, Plaintiff has suffered and continues to suffer irreparable harm in the form of severe emotional distress including but not limited to, anxiety, panic, humiliation, embarrassment, stress, loss of self-esteem and self-confidence, anguish, personal hardship, career and social disruption, psychological and emotional harm, economic and financial damages, loss of employment opportunities, and other such harms and damages.

## COUNT V

### *(New Jersey Law Against Discrimination, N.J.S.A. § 10:5-12(e) – Aiding & Abetting)*

115.    Plaintiff hereby repeats and realleges each of the above-mentioned allegations in paragraphs 1 through 114 as if fully set forth herein.

116.    As outlined in greater detail above, Defendants Provost Anthony Lowman, Dean Thomas Cavalieri, Interim Dean Richard Jermyn, Chair Kevin Overbeck, Associate Vice President of Human Resources Henry Oh, and Director of Human Resources Keith Burkhardt aided and abetted one another in violating the LAD, N.J.S.A. § 10:5-12(e) et seq., through illegal age discrimination and acts of retaliation against Dr. Pruchno.

117.    Provost Anthony Lowman, Dean Thomas Cavalieri, Interim Dean Richard Jermyn, Chair Kevin Overbeck, Associate Vice President of Human Resources Henry Oh, and Director of Human Resources Keith Burkhardt interfered with Dr. Pruchno's exercise and enjoyment of rights under the LAD, N.J.S.A. § 10:5-12(e) et seq., and even if in part, eliminated her title, and reduced her salary by 30% due to Dr. Pruchno's age.

118.    As in more detailed outlined above, Anthony Lowman, Ph.D., Provost, Rowan University, Lowman is Provost and ultimate decision maker for Rowan University, but in conjunction with Keith Burkhardt, Human Resources Manag**er,** Henry Oh, Associate Vice President of Human Resources Thomas Cavalieri, D.O., Dean,  Richard Jermyn, D.O., Interim Dean, Kevin Overbeck, D.O., Chair NJISA, , failed to administer policy, provided no written warnings, engaged in a demotion, and did reduce Plaintiff's salary, based upon a collaborate effort to demote Plaintiff due to her age.

119.    Even after Defendants' realized that their actions were illegal, Defendants engaged in a concerted effort to hide their illegal conduct by offering Plaintiff a corrected salary, albeit at

a later date, but to cover their scheme, demanded that Plaintiff sign a 4-page non-disclosure agreement.

120.    After Plaintiff complained of the illegal age discrimination, formal complaints and EEOC/DCR filing, Defendants, in a concerted effort to humiliated, demoralize and single out Plaintiff, retaliated against her by moving her office into what was a basement closet area, took away her office furniture and equipment, including an ergonomical chair.

121.    Defendant Rowan is vicariously liable for the illegal actions of Provost Anthony Lowman, Dean Thomas Cavalieri, Interim Dean Richard Jermyn, Chair Kevin Overbeck, Associate Vice President of Human Resources Henry Oh, and Director of Human Resources Keith Burkhardt.  Defendants Provost Anthony Lowman, Dean Thomas Cavalieri, Interim Dean Richard Jermyn, Chair Kevin Overbeck, Associate Vice President of Human Resources Henry Oh, and Director of Human Resources Keith Burkhardt are individually liable to Plaintiff for their violations of the LAD, N.J.S.A. § 10:5-12(e) et seq.

122.    Although the Defendants knew or should have known of the discrimination imposed, Defendants failed to take any corrective measures to stop or prevent the discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. § 10:15-1, et seq.

123.    As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of the New Jersey Law Against Discrimination, Plaintiff has suffered and continues to suffer financial and economic damages as well as severe mental anguish and emotional distress, including but not limited to, anxiety, panic, humiliation, embarrassment, stress, loss of self-esteem and self-confidence, and emotional pain and suffering.

124.    Defendants' unlawful discriminatory conduct constitutes a willful and wanton violation of the New Jersey Law Against Discrimination, was outrageous and malicious, was

intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

### **Demand for Relief**

**WHEREFORE**, for each cause of action, Plaintiff demands judgment against Defendants, individually, jointly and severally, as follows:

a.  Awarding Plaintiff damages, including, but not limited to, equitable, punitive and compensatory damages on all lost benefits, wages and rights, including, but not limited to lost earning power, the adverse tax consequences of a lump sum award, and other benefits with respect to Plaintiff's employment, and non-economic damages for emotional distress, together with both pre-judgment and post-judgment interest and attorneys' fees and costs of court for Defendant's violations of Plaintiff's civil rights;

b.  Awarding Plaintiff damages, including, but not limited to, equitable, compensatory damages and punitive damages on all lost benefits, wages and rights, including, but not limited to lost earning power, the adverse tax consequences of a lump sum award, and other benefits with respect to Plaintiff's employment, and non-economic damages for emotional distress, together with both pre-judgment and post-judgment interest and attorneys' fees and costs of court for with regard to adverse employment action(s) and other retaliation and harassment as a result of Plaintiff's age, complaints of discrimination, and whistle-blowing activities;

c.  Enjoining Defendants' further violations of Plaintiff's civil rights;

d.  Awarding Plaintiff damages, including, but not limited to, equitable, compensatory, and punitive damages for emotional distress, together with both pre-judgment and post-judgment interest and attorneys' fees and costs of court as Defendants have violated

Plaintiff's rights to be free from the injuries which he has suffered due to the Defendant's actions.

e.  For such other, further, additional and different relief as this Court deems just and proper.

*MARK | LAVIGNE, LLC*
Attorneys for Plaintiff Rachel Pruchno

Dated: May 5, 2025,        EDWARD J. HERBAN, ESQ.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury of all issues triable by jury.

*MARK | LAVIGNE, LLC*
Attorneys for Plaintiff Rachel Pruchno

Dated: May 5, 2025,        EDWARD J. HERBAN, ESQ.