**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RACHEL PRUCHNO,<br><br>          Plaintiff,<br><br>     v.<br><br>ROWAN UNIVERSITY *a/k/a Rowan-Virtua School of Osteopathic Medicine*; KEITH BURKHARDT; THOMAS CAVALIERI; RICHARD JERMYN; ANTHONY LOWMAN; HENRY OH; KEVIN OVERBECK; ABC COMPANIES 1-10; JOHN and JANE DOES 1-10,<br><br>          Defendants. | **No.  1:24-cv-06619-RMB-EAP** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT
PURSUANT TO RULE 12(b)(6)**

**SAUL EWING LLP**
James A. Keller (Attorney ID: #020991996)
Mark A. Nehme (Attorney ID: #278092018)
650 College Road East, Suite 4000
Princeton, NJ 08540-6603
T: (609) 452-3100
F: (609) 452-3122
james.keller@saul.com
mark.nehme@saul.com

Of counsel and on the brief:
James A. Keller, Esq.

On the brief:
Mark A. Nehme, Esq.
Katherine Ellen Chrisman, Esq.

i

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................1

SUMMARY OF THE COMPLAINT .......................................................................2

    I.   Parties ...........................................................................................................2

    II.  Pruchno's Time at Rowan .........................................................................3

    III. Change in Pruchno's Title ........................................................................5

    IV. Pruchno's Complaints to University Leadership ....................................6

    V.  AAUP Grievances and Disciplinary History.........................................7

    VI. Allegations Regarding Retaliation and CEPA.........................................8

    VII.  Legal Claims Asserted ...........................................................................9

LEGAL ARGUMENT.............................................................................................10

    I.   STANDARD OF REVIEW.......................................................................10

    II.  THE COURT SHOULD DISMISS PLAINTIFF'S NJLAD AGE DISCRIMINATION CLAIM (COUNT I) BECAUSE PLAINTIFF'S ALLEGATIONS DO NOT SUGGEST A PRETEXTUAL BASIS FOR HER POSITION'S ELIMINATION.................................................................11

    III. THE COURT SHOULD DISMISS BOTH OF PLAINTIFF'S NJLAD RETALIATION CLAIMS (COUNTS II AND III) BECAUSE OF PLAINTIFF'S FAILURE TO STATE A CLAIM. ........................................12

        A.  Plaintiff's Allegations About Changes to the Physical Location of Her Office Do Not Constitute an Adverse Employment Action. ...........................13

        B.  The University's Disciplinary Actions Are Not Adverse Employment Actions. ...............................................................................................15

        C.  Plaintiff Fails to Plead That Assigning Her to Teach a Basic Science Course and Moving to Terminate Her When She Refused Constitute Impermissible Retaliatory Actions by the University.......................................16

        D.  Plaintiff Fails to Establish a Prima Facie Claim of Retaliatory Discharge17

    IV. THE COURT SHOULD DISMISS PLAINTIFF'S CEPA CLAIM (COUNT IV) BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM.................................................................................................................18

    VI. THE COURT SHOULD DISMISS PLAINTIFF'S NJLAD AIDING AND ABETTING CLAIM (COUNT V) BECAUSE PLAINTIFF FAILED TO STATE A CLAIM.................................................................................23

A. Burkhardt and Oh Are Not Decision-Makers ...............................................24

B. Cavalieri, Overbrook, and Lowman Did Not Provide "Substantial Assistance" to the University ...............................................................................24

   1. *Cavalieri* ..............................................................................................24

   2. *Overbeck* ..............................................................................................25

   3. *Lowman*................................................................................................25

C. Plaintiff Cannot Maintain NJLAD Aiding and Abetting Claim Absent a Principal Violator. ..........................................................................................26

**V. CONCLUSION** ........................................................................................27

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ..............................................................10, 11

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ............................................8

Bernstein v. City of Atl. City, No. 08-cv-3796, 2012 WL 1079030 (D.N.J. Mar. 30, 2012) ..............................................................................................................14

Broad v. Home Depot U.S.A., 16 F. Supp. 3d 413 (2007) ....................................18

Buchholz v. Victor Printing, Inc., 877 F. Supp. 2d 180 (D.N.J. 2012) ...................11

Calabria Ristorante, Inc. v. Ruggiero Seafood, Inc., 706 F. Supp. 3d 489..............16

Failla v. City of Passaic, 146 F.3d 149 (3d Cir. 1998) ...........................................23

Hargrave v. Cnty. of Atl., 262 F. Supp. 2d 393 (D.N.J. 2003)................................15

Houston v. Dialysis Clinic, Inc., No. 13-4461, 2015 WL 3935104 (D.N.J. June 26, 2015) ....................................................................................................................17

Hurley v. Atlantic City Police Dep't, 174 F.3d 95 (3rd Cir. 1999) ........................23

Langley v. Merck & Co., Inc., 186 Fed. Appx. 258 (3d Cir. 2006) ........................14

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ........................11, 16, 17

Murray v. Cnty. of Hudson, No. 17-2857, 2023 WL 6785081 (D.N.J. Oct. 13, 2023) ....................................................................................................................14

Phillips v. Cnty of Allegheny, 515 F.3d 224 (3d Cir. 2008) ..................................10

Sharp v. Kean Univ., 153 F. Supp. 3d 669 (D.N.J. 2015) .......................................17

Tommy v. Bahama, 550 U.S. 544 (2007)..............................................................10

Waiters v. Aviles, 418 F. App'x 68 (3d Cir. 2011) ...........................................11, 12

**STATE CASES**

Cicchetti v. Morris Cty. Sheriff's Office, 194 N.J. 563 (2008).............................26

Clowes v. Terminix Int'l, Inc., 109 N.J. 575 (1988) ................................................17

Dzwonar v. McDevitt, 177 N.J. 451 (2003) ...............................................19, 20, 21

El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145 (App. Div. 2005)...........11

Gayden v. Kean Univ., No. A-0985-22, 2024 WL 3062681 (App. Div. June 20, 2024) ...............................................................................................................15

Maw v. Advanced Clinical Communications, Inc., 179 N.J. 439 ...........................21

Mehlman v. Mobil Oil Corp., 153 N.J. 163 (1988) ................................................20

Prager v. Joyce Honda, Inc., 447 N.J. Super. 124 (App. Div. 2016)......................13

Puglia v. Elk Pipeline, Inc., 226 N.J. 258 (2016) ..................................................20

Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543 (App. Div. 1995) ...............................................................................................................13

Shepherd v. Hunterdon Developmental Ctr., 336 N.J. Super. 395 (App. Div. 2001) ..............................................................................................................16, 17

Smith v. Millville Rescue Squad, 225 N.J. 373 (2016) ...........................................11

Tarr v. Ciasulli, 181 N.J. 70 (2004) .......................................................................23

Victor v. State, 401 N.J. Super. 596 (2008)............................................................14

Young v. Hobart West Group, 385 N.J. Super. 448 ................................................13

**FEDERAL STATUTES**

29 U.S.C.A. § 1166(a)(1)........................................................................................22

F.R.C.P. 12(b)(6)..............................................................................................passim

**STATE STATUTES**

New Jersey Conscientious Employee Protection Act "CEPA"........................passim

New Jersey Law Against Discrimination "NJLAD" .......................................passim

v

Defendants Rowan University ("**Rowan**"), Keith Burkhardt ("**Burkhardt**"), Thomas Cavalieri ("**Cavalieri**"), Richard Jermyn ("**Jermyn**"), Anthony Lowman ("**Lowman**"), Henry Oh ("**Oh**"), and Kevin Overbeck ("**Overbeck**") (Burkhardt, Cavalieri, Jermyn, Lowman, Oh, and Overbeck collectively referred to as the "**Individual Defendants**") (Rowan and the Individual Defendants together referred to as "**Defendants**") by and through their counsel Saul Ewing LLP, hereby move to stay the action pending arbitration, and to dismiss the Third Amended Complaint ("Complaint") filed by Plaintiff Rachel Pruchno ("**Plaintiff**" or "**Pruchno**") for failure to state a claim upon which relief can be granted pursuant to F.R.C.P. 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff asserts claims of age discrimination, retaliation, and aiding and abetting under the New Jersey Law Against Discrimination ("**NJLAD**") and for retaliation under the New Jersey Conscientious Employee Protection Act ("**CEPA**"). All of Plaintiff's allegations stem from the University's decision to eliminate Plaintiff's title as Director of Research and revert Plaintiff back to tenured faculty. However, Plaintiff has failed to make out a claim as to any count of the Complaint.

All of Plaintiff's NJLAD claims fail because Plaintiff has not pled any facts that support age-based discriminatory intent. Plaintiff' contends that the decision to change Plaintiff's position is pretextual for age discrimination, however she did not

1

plead any facts that would suggest any reason other than her failure to apply for grants, let alone any discriminatory reason, for the change in her title or her termination. Moreover, the internal charges that Plaintiff takes issue with are simply due to Plaintiff's refusal to perform her work duties as a faculty member of the University, not for any pretextual reason.

Plaintiff similarly fails to allege a viable claim under CEPA. First, Plaintiff has not alleged facts to provide a reasonable basis for a belief that Defendants violated any rule, law, or policy that is of public concern. Rather, Plaintiff's allegations concern private workplace issues and grievances. Second, Plaintiff has not provided facts that any adverse action causally relates to any whistleblowing activity. As such, CEPA is inapplicable.

Defendants submit the within Motion to Dismiss because the Complaint fails to state any cognizable legal claims for all of the reasons detailed below.

**SUMMARY OF THE COMPLAINT[1]**

I.     **Parties**

Pruchno began her employment with the University in April 2004, accepting the position of Director of Research for the New Jersey Institute for Successful

---

[1] Because a Rule 12(b)(6) motion to dismiss is based on the sufficiency of the pleadings, this motion assumes and accepts the allegations within the third amended complaint filed on May 5, 2025, ECF No. 23 ("Compl.") as true, solely for purposes of this motion.

Aging ("**NJISA**"), which was organized within the Department of Medicine. See Compl. ¶ 13. She was tenured. Compl. ¶ 13. Through 2021, Pruchno's direct supervisor was the NJISA chair, Anita Chopra, and Dr. Chopra's supervisor was Cavalieri, then-Dean of the Department of Medicine. See Compl. ¶¶ 4, 21.

In 2021, Dr. Chopra stepped down as NJISA chair and Overbeck assumed the role. See Compl. ¶¶ 8, 26. Overbeck continued in that role through the remainder of the Complaint. See Compl. ¶ 8. In February 2023, Cavalieri stepped down as Dean of the Department of Medicine and Jermyn assumed the role, first on an interim basis and then on a permanent basis. See Compl. ¶ 5. Jermyn continued in that role through the remainder of the Complaint. See Compl. ¶ 5.

Lowman was the University's Provost at all times relevant to the Complaint. See Compl. ¶ 6. Burkhardt and Oh are University Human Resources professionals. See Compl. ¶¶ 3, 7.

## II.    Pruchno's Time at Rowan

Pruchno received a contract for her employment, which identified her as responsible "for developing, overseeing, and maintaining a schoolwide program on research in the field of aging." Compl. ¶ 14. Her contract did not include any specific language that she was to have "grant writing" responsibilities, but she secured over six million dollars in grants for the University over the course of her tenure. Compl.

3

¶ 15, 17. As a result, Pruchno received repeated reviews documenting that she had exceeded her goals. Compl. ¶ 16.

In January 2019, Pruchno informed the University that she would be retiring in the not-too-distant future, and that it would be prudent for the University to hire a successor that Pruchno would train to take over grant writing following her retirement. Compl. ¶¶ 19-20. Pruchno called a meeting with then-Dean Cavalieri and then-Chairwoman Chopra. Compl. ¶ 21. During this meeting, Pruchno told Cavalieri and Chopra that she would be happy to continue writing grants if the University provided her with a successor. Compl. ¶¶ 21-22. Cavalieri advised Pruchno that the University did not have the budget to hire someone to work alongside her. Compl. ¶ 23.

Subsequently, Pruchno and Chopra developed a work plan that focused primarily on Pruchno writing scholarly papers, developing a book about successful aging, and supporting the grant writing activities of other University faculty interested in aging. Compl. ¶ 24. Pruchno did submit an NIH grant in June 2021, partially in the hopes that it would convince Cavalieri to reconsider hiring a successor, but the project was not funded. Compl. ¶ 25. Otherwise, Pruchno no longer wrote grants. See Compl. ¶ 27-28, 35.

When Overbeck became the NJISA chair in 2021, he asked Pruchno why she was no longer writing grants. Compl. ¶ 27. Pruchno told Overbeck about her decision

4

and the January 2019 meeting, and advised she would continue writing grant proposals if a succession plan was put in place. Compl. ¶ 28. Overbeck attempted but was not able to secure funding for a successor. Compl. ¶ 28. Overbeck later provided Pruchno a favorable annual performance review. Compl. ¶ 29.

### III.    Change in Pruchno's Title

On June 19, 2023, Pruchno was called into a meeting with Overbeck, then-Interim Dean Jermyn, Oh, and Burkhardt. Compl. ¶ 30. Pruchno was told that she would no longer serve as Director of Research and she would be given the new title of Professor of Basic Science. Compl. ¶ 30. Also during that meeting, Pruchno was told her salary would be reduced by more than 30% in connection with the title change. Compl. ¶ 31. Pruchno was told that both changes would be effective July 1, 2023. Compl. ¶ 33. Pruchno was told that Jermyn had decided there was no need to continue with her in the Director of Research position since Pruchno was no longer applying to grants. Compl. ¶ 34.

Dr. Pruchno later received a letter from Jermyn and Oh memorializing her reduction in pay and change in title. Compl. ¶ 39. And on July 19, 2023, Pruchno was called into a meeting with Overbeck and Burkhardt to discuss developing a workplan associated with her new role, and the requirement that she teach. Compl. ¶ 40. Pruchno submitted the work plan later that same day, but received no response. Compl. ¶ 41.

**IV.    Pruchno's Complaints to University Leadership**

In June 2023, Pruchno's then-attorney sent a letter to Dean Jermyn complaining about the University's actions taken against her. Compl. ¶ 42. In September 2023, Pruchno met with Provost Lowman to complain regarding her position elimination and salary reduction. Compl. ¶ 43. At the meeting, Lowman told Pruchno he was not aware of the decision. Compl. ¶ 43. Lowman asked her who made the decision, and Pruchno stated she did not know. Compl. ¶ 43 Lowman also discussed his goal of developing Rowan into an R1 University.[2]   Compl. ¶ 43. Lowman said he would discuss Pruchno's concerns with Overbeck and Jermyn and resolve the problem. Compl. ¶ 43.

In late October 2023, Lowman sent Pruchno a letter offering to restore her original salary for the time period from June 2023 through December 2023. Compl. ¶ 44. In exchange for accepting this offer, Pruchno would provide a full waiver and release for any age-related claims. Compl. ¶ 45. Pruchno did not take the offer. Compl. ¶ 47. On November 20, 2023, Pruchno received a letter from Lowman nonetheless authorizing backpay for July 1, 2023 through November 30, 2023, as a "one-time payment for four-months' notice at a manager's rate." Compl. ¶ 51. The

---

[2] An R1 University – a Research I University – refers to a university classified by the Carnegie Classification of Institutions of Higher Education as excelling in awarding doctoral degrees and having millions of dollars in annual total research expenditures. As of 2023, there are 146 R1 Universities.

letter also maintained the decision to eliminate the Director of Research title, effective June 30, 2023. Compl. ¶ 52.  Pruchno remained on the University's payroll as a faculty member, and was expected to teach for the 2024-2025 Academic Year.

## V.    <u>AAUP Grievances and Disciplinary History</u>

The American Association of University Professors (AAUP) has filed three grievances on Pruchno's behalf against Rowan University. <u>See</u> Compl. ¶ 74.

First, Pruchno was provided a workplan for the 2024-2025 Academic Year that required her to teach a clinical class to prospective medical students. Pruchno deemed this request "unethical" based on her belief that she was not qualified to teach the course, and she refused to teach. <u>See</u> Compl. ¶¶ 108-109. The AAUP submitted a grievance regarding Plaintiff's objection to the University's 2024-2025 work plan. Compl. ¶ 48. Pruchno contends that her physical attendance was required at hearings about this grievance in lieu of virtual appearance, which she also perceived to be punitive. Compl. ¶ 49.

Second, on September 4, 2024, the University sent Pruchno a letter instituting disciplinary charges for job abandonment due to her refusal to teach. Compl. ¶ 63. Pruchno's second AAUP grievance challenged this job action. Compl. ¶ 65. On November 22, 2024, a hearing was conducted with the AAUP and HR regarding the University's job abandonment charges. Compl. ¶ 68. On December 9, 2024, the

7

grievance hearing officer found in favor of the University, and concluded that Pruchno abandoned her job. Compl. ¶ 69.

Third, Plaintiff ultimately was charged with insubordination and terminated for her continued refusal to teach. Compl. ¶ 109.  In January 2025, the AAUP filed their third grievance against Defendants due to Plaintiff's termination. Compl. ¶ 74.

## VI.    Allegations Regarding Retaliation and CEPA

Pruchno contends that in December 2023 her office was relocated into a storage closet without windows or ventilation, and her ergonomic furniture was replaced. Compl. ¶ 53. Her files and books were also stuffed into the storage office. Compl. ¶ 53. Pruchno alleges that these actions were retaliatory for her raising internal complaints against the University.

On May 29, 2024, Plaintiff filed the instant lawsuit, first amended on May 30, 2024. Compl. ¶ 59. In August 2024, the University assigned Pruchno to teach an in-person problem-based learning class to medical students. Compl. ¶ 60. Pruchno alleges that the University assigned her this class in retaliation for her filing a legal complaint. Compl. ¶ 60.

Pruchno also contends that the University required that Dr. Pruchno physically attend the AAUP grievance hearings, despite that Pruchno requested attendance virtually as she lives in Florida. Compl. ¶ 66. Pruchno contends that this, too, was retaliatory.

8

In January 2025, the University discontinued salary payments to Pruchno. Her third AAUP grievance also contested this discontinuance of pay while Pruchno's grievance process was ongoing. Compl. ¶ 74-75. Also in January 2025, Defendant Verona[3] delayed completion of Pruchno's Medicare enrollment form, which delayed her access to benefits. Compl. ¶ 78. Pruchno contends that these actions, too, were retaliatory.

## VII.  **Legal Claims Asserted**

Based on the allegations set forth above, Plaintiff asserts claims of age discrimination, retaliation, and aiding and abetting under the New Jersey Law Against Discrimination ("**NJLAD**"), and retaliation under the New Jersey Conscientious Employee Protection Act ("**CEPA**") as follows:

- Count I – Discrimination Due to Age In violation of NJLAD, N.J.S.A. § 10:5-12(a);

- Count II – Retaliation Before Defendants Terminated Plaintiff's Employment in Violation of NJLAD, N.J.S.A. § 10:5-12(d);

- Count III – Retaliation by Termination of Plaintiff's Employment in Violation of NJLAD, N.J.S.A. § 10:5-12(d);

- Count IV – Retaliation Under CEPA;

- Count V – Aiding and Abetting in violation of NJLAD, N.J.S.A. § 10:5-12(e).

---

[3] It is likely that Plaintiff inadvertently utilized the name "Verona" in place of a named Defendant. However, it is unclear to which Defendant she refers.

9

## LEGAL ARGUMENT

### I.    STANDARD OF REVIEW

A defendant may move to dismiss a complaint pursuant to Rule 12(b)(6) when the complaint fails to state a claim upon which relief may be granted. To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." Tommy v. Bahama, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Where a [pleading alleges] facts that are 'merely consistent with' [the moving party's] liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007).

In evaluating a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party." Phillips v. Cnty of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is not required to accept a plaintiff's "bald assertions," "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations." Wright and Miller, Federal Practice & Procedure, Vol. 5, § 1357 at 596;

10

see also Iqbal, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

**II.     THE COURT SHOULD DISMISS PLAINTIFF'S NJLAD AGE DISCRIMINATION CLAIM (COUNT I) BECAUSE PLAINTIFF'S ALLEGATIONS DO NOT SUGGEST A PRETEXTUAL BASIS FOR HER POSITION'S ELIMINATION.**

In cases alleging age discrimination under the NJLAD, "an employee must show that the prohibited consideration, age, played a role in the decision-making process and that it had a determinative influence on the outcome of that process." Buchholz v. Victor Printing, Inc., 877 F. Supp. 2d 180, 185 (D.N.J. 2012). A Plaintiff can establish discriminatory animus through direct evidence of age bias. See Smith v. Millville Rescue Squad, 225 N.J. 373 (2016) (discriminatory remarks may serve as evidence of ill will under NJLAD). Otherwise, plaintiffs must establish discrimination through circumstantial evidence pursuant to the McDonnell Douglas burden-shifting framework. See Buchholz, 877 F. Supp. 2d at 187 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To survive a Rule 12(b)(6) motion to dismiss under McDonnell Douglas, a plaintiff must plead plausible facts (as opposed to conclusory allegations) sufficiently correlating an adverse action with a discriminatory motive. See generally Waiters v. Aviles, 418 F. App'x 68, 71 (3d Cir. 2011).

Here, Pruchno does not plead any direct evidence of discrimination. Superficially, Pruchno does not plead that Jermyn or any other decisionmaker expressed any anti-age animus. See generally Compl. To the contrary, Pruchno herself pleads that Jermyn decided there was no need to continue with the Director of Research title since Pruchno was no longer applying for research grants. Compl. ¶ 34.

Nor does Pruchno plead any other facts that would sufficiently correlate the elimination of her Director position with her age, nor her declaration of an intention to retire. See generally Waiters v. Aviles, 418 F. App'x 68, 71 (3d Cir. 2011). As Pruchno's own Complaint avers, the University has been engaged in a concerted push to become certified as an R1 University. Compl. ¶ 43.  A top-tier research university simply cannot have a "Research Director" who is not going to apply for research grants.  This has nothing to do with Pruchno's age.

Defendants respectfully request that the Court dismiss Plaintiff's NJLAD age discrimination claim (Count I), with prejudice.

III.    **THE COURT SHOULD DISMISS BOTH OF PLAINTIFF'S NJLAD RETALIATION CLAIMS (COUNTS II AND III) BECAUSE OF PLAINTIFF'S FAILURE TO STATE A CLAIM.**

To prove a case for retaliation under the LAD, a plaintiff must demonstrate:

(1) she engaged in protected activity; (2) the activity was known to the employer; (3) she suffered an adverse employment decision; and (4)

12

there existed a causal link between the protected activity and the adverse employment action.

Prager v. Joyce Honda, Inc., 447 N.J. Super. 124, 134 (App. Div. 2016) (quotations omitted).

"Once a plaintiff establishes the prima facie elements of retaliation, the defendant must articulate a legitimate, non-retaliatory reason for the decision." Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 549 (App. Div. 1995) (citations modified). Finally, as a final step, the plaintiff must plausibly plead a discriminatory motive and show the employer's stated reason was merely a pretext for discrimination. See Young v. Hobart West Group, 385 N.J. Super. 448, 465; see also Romano, 284 N.J. Super. at 549.

A.    Plaintiff's Allegations About Changes to the Physical Location of Her Office Do Not Constitute an Adverse Employment Action.

For purposes of NJLAD retaliation, an event constitutes an adverse employment decision when it would objectively dissuade an employee from making or supporting a charge of discrimination. Prager, 447 N.J. at 139 (quotation omitted); see also id. at 139-40 ("In elaborating on the standard, the United States Supreme Court explained the anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.") (quotation omitted). An adverse employment action must be "sufficiently severe or pervasive to have altered [the plaintiff's] conditions of employment in an important and

13

material manner." Murray v. Cnty. of Hudson, No. 17-2875, 2023 WL 6785081, at *14 (D.N.J. Oct. 13, 2023) (quoting El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 176 (App. Div. 2005)).

Here, the first adverse employment action alleged is the transfer of Pruchno's workspace to a storage closet/office in December 2023, allegedly without vents. Compl. ¶¶ 53; 94. However, the relocation of an individual's workspace does not, standing alone, constitute an adverse employment action under NJLAD. Bernstein v. City of Atl. City, No. 08-cv-3796, 2012 WL 1079030, at *12 (D.N.J. Mar. 30, 2012) ("Plaintiff has not, however, established that the relocation of her work space . . . or the filing of disciplinary charges, establishes an adverse employment action."); see also Langley v. Merck & Co., Inc., 186 Fed. Appx. 258, 260 (3d Cir. 2006) (finding that a change in title, office, and reporting relationship was insufficient to constitute an adverse employment action).

Nor do Pruchno's other claims regarding issues with her office space pass muster under at 12(b)(6) standard. Specifically, Pruchno alleges that the new space lacks vents, and she no longer has her "ergonomic chair." See Compl. ¶¶ 53; 94. These *de minimis* complaints do not qualify as adverse employment actions. See Victor v. State, 401 N.J. Super. 596, 616 (2008) (finding that "an employer's adverse employment action must rise above something that makes an employee unhappy, resentful or otherwise cause an incidental workplace dissatisfaction").

14

B.      The University's Disciplinary Actions Are Not Adverse Employment Actions.

Plaintiff also alleges that the University's September 2024 "disciplinary charges" against her constitute retaliation for her complaints. See Compl. ¶¶ 63-64. As a preliminary matter, mere notice of disciplinary charges does not constitute an adverse employment action. See Hargrave v. Cnty. of Atl., 262 F. Supp. 2d 393, 428 (D.N.J. 2003) ("Standing alone, this Notice merely served to inform Plaintiff that the County was considering taking disciplinary action against her and therefore could not have had a materially adverse effect on Plaintiff's employment status.").[4]

Plaintiff pleads no plausible facts suggesting that there is a "causal link" between the disciplinary charges instituted and any of her complaints or grievances (including the Complaint to the instant litigation, the EEOC Complaint, and the NJ DCR Complaint, and grievances filed by the AAUP as referenced in Plaintiff's Complaint. See generally Compl. Nor can Plaintiff rely solely on temporal proximity between the protected activity and adverse employment action when they took place nearly a year apart. See generally Gayden v. Kean Univ., No. A-0985-22, 2024 WL 3062681, at *6 (App. Div. June 20, 2024) (four month temporal proximity not "unusually suggestive" in NJLAD retaliation context).

---

[4] What occurred in September 2024, to be clear, is that Plaintiff, a Professor, formally defied instructions to teach students on campus. In other words, Plaintiff wanted to be paid as a Professor and receive state funds for doing so, but not actually teach, and not actually work in New Jersey where her employer is located.

15

C.    Plaintiff Fails to Plead That Assigning Her to Teach a Basic Science Course and Moving to Terminate Her When She Refused Constitute Impermissible Retaliatory Actions by the University.

Plaintiff claims she was retaliated against for objecting to the 2024-2025 work plan that required she teach an in-person clinical class to prospective medical professionals. See Pl's Compl. ¶¶ 60-62, 67, 108. Plaintiff is a tenured professor and a scientist. The Role of the PBL Faculty Facilitator at Rowan-Virtual School of Medicine clearly requires: (1) small group facilitation, and (2) block directorship, including supporting in SimLab. Furthermore, the description clarifies that the role is held by both "basic scientists" and "clinicians." See the true and accurate copy of the Description of the Role of the PBL Faculty Facility, attached hereto as Exhibit A.[5] Moreover, it is reasonably commensurate with this position that the course(s) be taught in person. The University assigning Pruchno a class commensurate with her Professor position simply cannot constitute retaliation, even if Pruchno was unhappy with having to do so. See Shepherd v. Hunterdon Developmental Ctr., 336 N.J.

---

[5] Although the Court "generally consider[s] only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record [], it may consider matters extraneous to the pleadings if they are integral to or explicitly relied upon in the complaint without converting the motion to dismiss to one for summary judgment under Federal Rule of Civil Procedure 12(d). Calabria Ristorante, Inc. v. Ruggiero Seafood, Inc., 706 F. Supp. 3d 489, 507 (citation modified).

"[I]f [, however,] a motion under Rule 12(b)(6) is thus converted into a summary judgment motion . . . both parties shall be given a reasonable opportunity to submit affidavits and extraneous proofs." Fed. R. Civ. P. 12(b) Advisory Committee's Notes to 1946 amendment.

Super. 395, 420 (App. Div. 2001) (finding that "emotional factors alone cannot constitute adverse employment action" under the NJLAD retaliation analysis).

D.    Plaintiff Fails to Establish a Prima Facie Claim of Retaliatory Discharge

In a claim of discriminatory discharge under the LAD, the starting point is McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). As articulated in Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 595–96, (1988), a plaintiff's prima facie case is established as follows:

> [T]he employee must prove (1) that [s]he was in the protected ... group, (2) that [s]he was performing his job at a level that met [her] employer's legitimate expectations, (3) that [s]he nevertheless was fired, and (4) that [the employer] sought someone to perform the same work after [s]he left.

> Clowes, supra, 109 N.J. at 597 (citations modified).

"[I]nferring a causal relationship between the protected activity and the adverse action is not logical when the two are separated by an intervening event that independently ... caused the adverse action." Houston v. Dialysis Clinic, Inc., No. 13-4461, 2015 WL 3935104, at *11 (D.N.J. June 26, 2015) (citations modified). Significantly, "[a]n NJLAD retaliation claim can only succeed where the plaintiff shows that he or she faced reprisal for opposing conduct that the NJLAD prohibits, including discrimination…" Sharp v. Kean Univ., 153 F. Supp. 3d 669, 676 (D.N.J. 2015).

17

Here, Plaintiff cannot and does not plausibly plead a prima facie case for termination based upon age (a protected status) or the filing of any Complaint (a protected activity). First, Plaintiff has not alleged any facts in the Complaint that would substantiate that Plaintiff was performing at a level that met her employer's legitimate expectations. Plaintiff steadfastly and unapologetically refused to teach in-person courses consistent with her position at the University. See supra, at Section III(C). Second, the Complaint does not include facts demonstrating that Pruchno's termination was for any other reason than due to her unwillingness to teach a clinical class to prospective medical professionals, same of which was required under her role at the University. See Compl. ¶¶ 60-63. Third, there are no allegations in the Complaint that the University sought another person to perform the same work after she left.

Defendants respectfully request that the Court dismiss Plaintiff's NJLAD retaliation claims (Count II-III), with prejudice.

## IV. THE COURT SHOULD DISMISS PLAINTIFF'S CEPA CLAIM (COUNT IV) BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM[6]

---

[6] Although Defendants do not allege that a CEPA retaliation claim bars Plaintiff's NJLAD retaliation claims at the pleading stage, it should be noted that CEPA's waiver provision (N.J.S.A. § 34:19-8) applies to claims of retaliatory conduct after the discovery stage. See Broad v. Home Depot U.S.A., 16 F. Supp. 3d 413, 418 (2014).

CEPA protects New Jersey employees from "retaliatory action" in three instances. N.J.S.A. 34:19–3. First, CEPA protects an employee who "[d]iscloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer or another employer . . . that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law" or "is fraudulent or criminal." N.J.S.A. 34:19–3(a). Second, employees who "[provide] information to, or testif[y] before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer," are also shielded from retaliation by CEPA. N.J.S.A. 34:19–3(b). Finally, an employee is protected when he "[o]bjects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes" violates "a law, or a rule or regulation" or  "is fraudulent or criminal" or "is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment." N.J.S.A. 34:19–3(c).

A CEPA claim requires that Plaintiff show that "(1) . . . she reasonably believed that . . . her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;  (2) . . . she performed a whistle-blowing activity as described in N.J.S.A. 34:19-3(c); (3) an adverse employment action was taken against . . . her; and (4) a causal relationship

19

exists between the whistle-blowing activity and the adverse employment action." Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003) (citations modified). The plaintiff must plausibly plead "that retaliation played a role in the decision and that it made an actual difference in defendant's decision." Puglia v. Elk Pipeline, Inc., 226 N.J. 258, 283 (2016) (citations modified).

CEPA claims also require that the offensive conduct implicate the public interest, not just inflict private harm or relate to private disputes. Indeed, CEPA is designed to "prevent retaliation against those employees who object to employer conduct that they reasonably believe to be unlawful or indisputably dangerous to the public health, safety or welfare." Dzwonar, 177 N.J. at 461 (2003) (citations modified). As such, "the offensive activity must pose a threat of public harm, not merely private harm or harm only to the aggrieved employee." Mehlman v. Mobil Oil Corp., 153 N.J. 163, 188 (1988). The statute of limitations for CEPA claims is one year. See N.J.S.A. 34:19–5 (providing that "[u]pon a violation of any of the provisions of [CEPA], an aggrieved employee or former employee may, within one year, institute a civil action in a court of competent jurisdiction").

Here, Plaintiff fails to make out any plausible claim under CEPA because (1) Plaintiff has not alleged facts to provide a reasonable basis for a belief that Defendants violated any rule, law, or policy in a way that is "dangerous to the public health, safety, or welfare", and (2) Plaintiff has not provided facts that any adverse

action causally relates to any whistleblowing activity. Finally, all factual allegations that occurred on or before May 5, 2024 (one year prior to the Third Amended Complaint wherein Plaintiff first alleges a CEPA claim) fail under the statute of limitations. N.J.S.A. 34:19–5.

To start, filing union grievances does not inherently qualify as whistleblowing activity under CEPA. Courts have consistently held that CEPA claims must involve conduct that implicates public interest rather than private disputes or internal workplace disagreements. The statutory elements and the analytical framework set forth in Dzwonar distinguishes an employee's objection to, or reporting of, an employer's illegal or unethical conduct from a routine dispute in the workplace regarding the relative merits of internal policies and procedures. See Dzwonar, 177 N.J. at 465-469 (affirming dismissal of plaintiff's CEPA claim based upon general administration of union meetings and union's allegedly inadequate explanation of its actions to membership); Maw v. Advanced Clinical Communications, Inc., 179 N.J. 439, 443; 445 (2004) (rejecting employee's CEPA claim where employee "was terminated for refusing to execute an employment agreement containing a do-not-compete provision" and stating that "the dispute between the employer and employee must be more than a private disagreement").

Here, Plaintiff's CEPA claim should be dismissed outright because she alleges no complaint or grievance that would have public ramifications. AAUP union

grievances are not public concerns, but rather involve internal workplace policies and agreements. There are no other grievances or complaints pled by Plaintiff that come close to the standard required for CEPA liability. For instance, Plaintiff alleges that, following her notice of termination, she was "cut off" from her university email, and as such could not obtain reference to COBRA or other materials. Compl. ¶¶ 70-73. However, COBRA requires a "written notice" to covered employees under certain circumstances, not that notice be sent via email. See 29 U.S.C.A. § 1166(a)(1). As such, no law was violated. She also alleges "delay" of completion of a Medicare form. However, as indicated, supra, neither of these matters involve public concerns. Moreover, Plaintiff has not alleged that she never received the requisite information—rather, she simply contests the method in which the information was received. Nor has Plaintiff pled any facts that connect any complaint or grievance with any of the alleged retaliatory actions of the University.

Additionally, several workplace concerns addressed in Plaintiff's Complaint occurred outside of CEPA's statute of limitations. These allegations include the November 2023 letter indicating that the Director of Research for the New Jersey Institute for Successful Aging was eliminated, and the December 2023 movement of Plaintiff's office space to a storage closet and removal of ergonomic furniture. See Compl. ¶¶ 52-53. All allegations predating May 5, 2024, must fail under the statute of limitations.

Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's CEPA claim (Count IV), with prejudice.

## VI.   THE COURT SHOULD DISMISS PLAINTIFF'S NJLAD AIDING AND ABETTING CLAIM (COUNT V) BECAUSE PLAINTIFF FAILED TO STATE A CLAIM.

As to each alleged aider and abettor, NJLAD requires a plaintiff to plausibly plead that: (1) the party whom the defendant aids performed a wrongful act that causes an injury; (2) the defendant was generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant knowingly and substantially assisted the principal violation. Tarr v. Ciasulli, 181 N.J. 70, 84 (2004) (citing Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 127 (3rd Cir. 1999)). The third element, "substantial assistance," is crucial. The Third Circuit has previously reiterated the importance of setting the standard for aiding and abetting "above mere knowledge and/or implementation, lest a reverse respondeat superior liability could be created under the guise of aiding and abetting." Failla v. City of Passaic, 146 F.3d 149, 159 (3d Cir. 1998).

Pruchno has not met this pleading standard. To attempt to support her aiding and abetting claim, Pruchno alleges: (1) that she filed the instant lawsuit on May 29, 2024, and that (2) in August 2024, Defendants sent a letter to Pruchno detailing her responsibilities for the 2024-2025 academic year with responsibilities including: (a) continuing her research (b) working with students, and adding (c) teaching an in-

23

person problem-based learning class to medical students;  and (3) that Defendants knew that Plaintiff lacked qualifications to teach this course. See Compl. ¶¶ 59-61. None of these alleged activities constitute actions which could have been reasonably believed to be unlawful or "substantially assisting" unlawful activity.

A.    Burkhardt and Oh Are Not Decision-Makers

As pled, Burkhardt and Oh are HR employees. Their involvement in Dr. Pruchno's situation, also as pled, does not exceed the regular involvement of HR in personnel decisions. Oh was present at the June 19, 2023 meeting during which Pruchno's title was changed, and he signed the letter with Jermyn affirming that decision. Compl. ¶ 30, 39. Burkhardt was also present at the June 19 meeting and at a subsequent meeting to discuss with Pruchno developing a workplan associated with her new role. Compl. ¶ 30, 40. Neither Defendant is, nor is pled to be, a decisionmaker in the Department of Medicine. See Compl. ¶¶ 3, 7.  For this reason, too, Defendants respectfully request that the Court dismiss Plaintiff's NJLAD aiding and abetting claim (Count V) against Oh and Burkhardt.

B.    Cavalieri, Overbrook, and Lowman Did Not Provide "Substantial Assistance" to the University

### 1. Cavalieri

No factual allegations exist to support aiding and abetting claims against Cavalieri. Cavalieri was no longer Dean when Pruchno's title was changed; he was

not even present at the June 2023 meeting. See Compl. ¶¶ 30. The Complaint also does not allege that Cavalieri's 2019 refusal to fund Plaintiff's successorship plan was itself a discriminatory act. See Compl. ¶¶ 83, 84 (identifying her loss of position and salary as the discriminatory acts). Nor could Plaintiff now sustain such a claim. See N.J.S.A. 10:5-12.11 (NJLAD has a two-year statute of limitations). For this reason, too, Defendants respectfully request that the Court dismiss Plaintiff's NJLAD aiding and abetting claim (Count V) against Cavalieri, with prejudice.

## 2. *Overbeck*

Similarly, no factual allegations exist to support aiding and abetting claims against Overbeck. Although Overbeck was Plaintiff's direct supervisor when her title was changed, see Compl. ¶ 8, there is no indication that anyone but Jermyn was involved in the decision. Compl. ¶ 34. To the contrary, the Complaint clarifies that Overbeck attempted and failed to secure funds for Pruchno's successorship, and otherwise gave Pruchno positive performance reviews. Compl. ¶¶ 27-29. Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's NJLAD aiding and abetting claim (Count V) against Overbeck.

## 3. *Lowman*

There are also no plausible factual allegations to support aiding and abetting claims against Lowman. The Complaint concedes that Lowman did not even know about Pruchno's title change until after it happened. See Compl. ¶ 43. Although the

25

Complaint alleges that the University later affirmed the title change decision in a November 20, 2023 letter, the Complaint does not provide any indication that Lowman had authority to reverse this decision. <u>See</u> Compl. ¶ 51-52. The only tangible action Plaintiff can attribute to Lowman was that he authorized five months of backpay to Plaintiff. Compl. ¶ 51. Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's NJLAD aiding and abetting claim (Count V) against Lowman.

    C.    <u>Plaintiff Cannot Maintain NJLAD Aiding and Abetting Claim Absent a Principal Violator.</u>

As an additional note -- if the Court dismisses Plaintiff's age discrimination claim, Plaintiff's aiding and abetting claims should similarly be dismissed. Without an underlying NJLAD claim, it is inappropriate to hold someone else liable for aiding or abetting same. <u>See</u> <u>Cicchetti v. Morris Cty. Sheriff's Office</u>, 194 N.J. 563, 594 (2008).

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that Third

Amended Complaint against Defendants with prejudice.

Date: July 23, 2025                    Respectfully submitted,


                                       **SAUL EWING LLP**

                                       By: /s/ James A. Keller

                                       James A. Keller (Attorney ID: #020991996)
                                       Mark A. Nehme (Attorney ID: #278092018)
                                       650 College Road East, Suite 4000
                                       Princeton, NJ 08540-6603
                                       T: (609) 452-3100
                                       F: (609) 452-3122
                                       james.keller@saul.com
                                       mark.nehme@saul.com

27

# Exhibit A

**The Role of PBL Faculty Facilitator**

**Overview**

The role of PBL Faculty Facilitator at Rowan-Virtua SOM is held by both basic scientists and clinicians, and consists of two parts:

·   PBL Block support

·   Additional component: Either grading of Medical Scholarship course assignments (basic scientists) or participation in SimLab procedures

Most faculty have a 0.3 FTE associated with the PBL track, though FTE varies widely.

Most faculty will have some of their time allotted to assist with evaluating Medical Scholarship assignments or occasionally supporting procedures in the SimLab.

**PBL Block Support**

**Small group facilitation**

The Problem Based Learning (PBL) track is one of two pre-clerkship tracks offered at Rowan-Virtua SOM. PBL, is a pedagogical practice employed in many medical schools. While there are numerous variants of the technique, the approach includes a patient presentation as an applied problem to a small group of students who engage in discussion over several sessions. A facilitator, sometimes called a tutor, serves to guide the system Block small groups of the PBL track and to give feedback to the students on their contributions to the group.

The PBL track uses standard patient case presentations through the platform DxR Clinician (https://dxrgroup.com/healthcare-education-products/dxr-clinician/).  Faculty facilitate the groups who begin with the patient's presenting situation and proceeds to simulation of taking a medical history, performing a physical examination of the patient, and ordering diagnostic tests, all as appropriate. Faculty facilitators guide students in reasoning their way through the patient's problem. Significant findings are recorded by the group along with their hypotheses and learning issues, knowledge needed to better understand and to pursue further the patient problem. Using tutorial skills, the faculty facilitates students' access to their own prior knowledge as well as their identification of

the limitations of their knowledge. The faculty also guides students to articulate their knowledge of the relevant disciplines as it relates to the patient problem at hand. As students' progress through the curriculum, they learn to reason through patient problems effectively and efficiently.

It is crucial to the learning process that students discover the medical information and pertinent underlying basic science for themselves, with minimal feedback of information from facilitator to students. Critical thinking requires the students to assume an active role in their education and this cannot be done if the facilitator provides the information. At the end of the case, however a brief discussion of the case, in question and answer format, with the facilitator acting as a basic science or clinical expert, is permitted.

**Block Directorship**

All PBL faculty participate in exam item writing and review. Most PBL faculty are asked to serve as Block directors or co-Block directors which includes the following:

- Choose appropriate cases for the designated Block from SIU or DxR
- Create and update the Syllabus in Rowan-Virtua SOM approved format
- Ensure each learning Block has level appropriate learning objectives
- Update and maintain mapping of learning objectives
- Attend all Exam Review Committee Meetings and post-exam analysis meetings with Curriculum and Assessment teams
- Collect, label, and ensure tagging of all exam and IQ questions
- Ensure timely release of student Strength and Opportunities Report for all exams
- Prepare annual post-Block review/self-evaluation as required by the PESA
- Liaise with:
  - the PBL Director/Assoc. Director (or Curriculum Dean) on all aspects of the Block
  - other Block directors etc. for seamless curricular presentation
  - Programs Assessment and Student Evaluation (PESA) Subcommittee, Pre-Clerkship Curriculum Subcommittee, and Curriculum Committee during all phases of Block design, implementation, review, and improvement
  - Block Administrator on all Block logistics

**Additional component**

The FTE allotted per faculty varies.  Any time exceeding the necessary FTE for supervising PBL block may be assigned to one of the following activities.

### Medical Scholarship

Rowan-Virtua SOM has a longitudinal scholarly curriculum that culminates in an individual Capstone project.  Faculty grade component assignments that include but are not limited to flashtalks, abstracts, literature reviews and drafts of the capstone paper.

### SimLab

Pre-clerkship students are introduced to basic procedures such as phlebotomy and suturing, as well as simulation encounters as part of their Osteopathic Clinical Skills course. Faculty may participate in this instruction during BRIDGE weeks approximately 3 x per year during their normal assigned small group times.