UNITED STATES DISTRICT COURT

for the District of New Jersey

| | |
|---|---|
| RACHEL PRUCHNO,<br><br>     Plaintiff,<br><br>    v.<br><br>ROWAN UNIVERSITY *a/k/a Rowan-Virtua School of Osteopathic Medicine*; KEITH BURKHARDT, THOMAS CAVALIERI, RICHARD JERMYN, ANTHONY LOWMAN, HENRY OH, KEVIN OVERBECK, ABC COMPANIES 1-10; JOHN and JANE DOES 1-10,<br><br>     Defendants. | Hon. Renee Marie Bumb, CJ<br><br>Case No. 1:24-cv-06619 |

---

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)

---

*MARK | LAVIGNE, LLC*
675 Morris Avenue, Suite 300
Springfield, New Jersey 07081
T: (973) 845-6606 (Main)
Jamison M. Mark, Esq. (042392000)
Edward J. Herban, Esq. (038561998)
jmark@newjerseyattorneys.com
eherban@newjerseyattorneys.com
*Attorneys for Plaintiff Rachel Pruchno*

On the brief:
Edward Herban, Esq.
Taylor Ruggieri, Esq.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT    4

STATEMENT OF FACTS ALLEGED IN THE THIRD AMENDED COMPLAINT  7

LEGAL ARGUMENT - THE LEGAL CLAIMS ASSERTED IN PLAINTIFF'S THIRD AMENDED COMPLAINT 13

I.    The State of The Law as Applied to the Legal Claims Asserted Establishes a Complaint That Withstands Scrutiny Pursuant to Federal Rule 12(b)(6) ........................13

II.    Plaintiff's Complaint Pleads a Plausible Age Discrimination Claim Under NJLAD 17

III.    Plaintiff's Complaint Pleads Plausible Retaliation Claims Under NJLAD............18

A.    Plaintiff's Allegations About Changes to Her Constitute an Adverse Employment Action.................................................................................................................. 19

B.    The University's Disciplinary Actions Constitute Adverse Employment Actions... 21

C.    Defendants' Assignment of Plaintiff to Teach a Brand New Clinical Course to Medical Students Constitutes Impermissible Retaliatory Actions by the University ......................... 23

D.    Plaintiff has Sufficiently Plead a Prima Facie Claim of Retaliatory Discharge Due to Defendants' Termination due to her Age and her Filed Complaints..................................... 25

IV.    Plaintiff's Complaint Pleads a Plausible CEPA Claim..............................................25

V.    Plaintiff's Complaint Pleads a Plausible Aiding and Abetting of Age Discrimination Claim Under NJLAD.................................................................................................................29

A.    Defendants' Stated Justifications Are Pretextual, Suggesting Discriminatory Motive. 31

B.    The Conditioned Offer of Pay Restoration Suggests Awareness of Wrongdoing and Constitutes Retaliation ................................................................................................ 31

CONCLUSION    32

## TABLE OF AUTHORITIES

Abbamont v. Piscataway Township Bd. of Educ., 138 N.J. 405, 431 (1994).......................... 24, 26

Allen v. Cape May Cty., 246 N.J. 275, 289 (2021)........................................................................ 25

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)................................................................................. 12

Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007) ........................................................11, 12, 13

Bernstein v. City of Atl. City, Civil Action No. 08-cv-3796 (NLH), 2012 U.S. Dist. LEXIS 44849,

   at *40 (D.N.J. Mar. 30, 2012) ................................................................................................ 19, 20

Buchholz v. Victor Printing, Inc., 877 F. Supp. 2d 180 (D.N.J. 2012) .......................................... 14

Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354, 373 (2007). ................................................... 17

Cicchetti v. Morris Cnty Sheriff's Off., 194 N.J. 563, 594 (2008) ......................................... 30, 32

Cohen v. Univ. of Med. & Dentistry of N.J., DOCKET NO. A-1300-12T1, (App. Div. Dec. 30,

   2013) ...................................................................................................................................... 15, 16

Conley v. Gibson, 355 U.S. 41 (1957)..........................................................................................11

Crawford v. Metro. Gov't of Nashville and Davidson Cty., 555 U.S. 271, 276 (2009)............... 28

Dzwonar v. McDevitt, 177 N.J. 451, 461 (2003)..................................................................... 24, 26

El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 176 (App. Div. 2005) .................... 18, 32

Estate of Roach v. TRW, Inc., 164 N.J. 598, 613 (2000) ............................................................. 26

Failla v. City of Passaic, 146 F.3d 149 (3d Cir. 1998) ................................................................. 31

Gillyard v. Geithner, 81 F. Supp. 3d 437, 443 (E.D.Pa. 2015)..................................................... 28

Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005)..........................................................11

Hitesman v. Bridgeway, Inc., 218 N.J. 8, 27 (2014)..................................................................... 25

Hurley v. Atlantic City Police Dep't, 174 F.3d 95 (3rd Cir. 1999) ......................................... 30, 31

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3rd Cir. 1997).......................... 13

Kanter v. Barella, 489 F.3d 170, 177 (3d. Cir. 2007)..................................................11

Langley v. Merck & Co., Inc., 186 Fed.Appx. 258,  260 (3d Cir. 2006)......................... 19

Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007)............................... 28, 29

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)............................... 15, 32

Murray v. Cty. of Hudson, Civil Action No. 17-2875 (JXN) (LDW), 2023 U.S. Dist. LEXIS 184298, at *42-43 (D.N.J. Oct. 13, 2023)......................................................... 18, 19, 21

Podias v. Mairs, 394 N.J. Super. 338, 353 (App. Div. 2007)......................................... 30

Prager v. Joyce Honda, Inc., 447 N.J. Super. 124 (App. Div. 2016)............................. 18

Shepherd v. Hunterdon Developmental Ctr., .............................................................. 23

Smith v. Millville Rescue Squad, 225 N.J. 373 (2016)................................................... 14

Tarr v. Ciasulli, 181 N.J. 70, 84 (2004)........................................................................ 30

Tegler v. Glob. Spectrum, 291 F. Supp. 3d 565, 580 (D.N.J. 2018) ........................... 26, 27, 28, 29

**Federal Statutes**

F.R.C.P. 12(b)(6) .............................................................................................*passim*

**State Statutes**

New Jersey Conscientious Employee Protection Act "CEPA"........................................*passim*

New Jersey Law Against Discrimination "NJLAD" ......................................................*passim*

**Other Authorities**

Model Jury Charges (Civil), 2.22 .................................................................................. 16

**PRELIMINARY STATEMENT**

The undersigned, through the law firm of Mark | Lavigne, LLC., submits this Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Third Complaint on behalf of Plaintiff Rachel Pruchno (herein after referred to as "Plaintiff" or "Dr. Pruchno"). The underlying action brought by Plaintiff is an employment law dispute brought against her former employer, Defendants Rowan University, Keith Burkhardt, Thomas Cavalieri, Richard Jermyn, Anthony Lowman, Henry Oh, Kevin Overbeck, and ABC Companies 1-10; John and Jane Does 1-10. (herein after referred to as "Rowan," "Burkhardt," "Cavalieri," "Jermyn," "Lowman," "Oh," and "Overbeck," respectively, collectively referred to as "Defendants"). Plaintiff is alleging violation of NJLAD Age Discrimination, NJLAD Retaliation Prior to Termination, NJLAD Retaliation Termination, CEPA Retaliation, and Aiding and Abetting.

Plaintiff joined Rowan as the Director of Research for the Center for Aging (now, the New Jersey Institute for Successful Aging [NJISA] at Rowan-Virtua), responsible for developing, overseeing, and maintaining a schoolwide program on research in the field of aging, on or after April 7, 2004 (herein after referred to as "Director"). Despite an exemplary record of career success, including securing significant NIH grants and multiple honors for her research (which was not part of her job description or one of her many responsibilities), Dr. Pruchno's efforts to establish a succession plan for her role were denied, blocking her from pursuing long-term grants which required personnel with knowledge of same to be present during the pendency of such lengthy grants. In June 2019, Plaintiff and Rowan agreed: (1) that she would be retiring in the not too distant future because of her age; (2) that seeking to secure research grants was NEVER a requirement of her position as Director; (3) that because of that, it would be prudent to implement a succession plan for her role; and (4) that in the absence of a succession plan it would be imprudent

4

for Pruchno, as Director, to be responsible for securing research grants because of her age. In June 2023, about four years after this agreement and the understanding which had been reached, Defendants conspired to remove Plaintiff from the role of Director by requiring of her the very task both Rowan and Pruchno agreed would not be required of her because of her age. Simply put, Defendants jointly conspired to abruptly strip Plaintiff of her Director of Research title, impose a 30% salary cut, and reassign her to a lesser role without consulting her because of her age. That is, Defendants assumed that Plaintiff would not perform the task from which Rowan already agreed to excuse Plaintiff from performing (because of her age) and simply demoted her and took away her pay without even consulting with her whether she would perform the task. A task that she had still been performing even after Rowan excused said performance.

Given Defendants' educational backgrounds and sophistication (all being university administrators), it would be surprising if they overtly informed Plaintiff that they were demoting her and cutting her pay because of her age. They know the law and knew they had to conceal their discriminatory intention (terminating the Director because of her age) by selecting a facially non-discriminatory reason - the grant writing task - as the basis for taking the negative job actions against Plaintiff. Indeed, they selected the singular criterion - grant writing – (which was never part of the Director role) to justify their decision to discriminate against Plaintiff. In 2019, Plaintiff and Rowan had both agreed that Plaintiff should not perform the task of grant writing because of her age. In 2023, Defendants jointly conspired to resurrect the grant writing task as a requirement for the job of Director knowing the history of why it was not. In a sense, Defendants conducted a brilliant Machiavellian maneuver - they picked the one task that they knew Plaintiff had reservations performing because of her age and foisted it upon her... Nonetheless, selecting it for that reason, as Plaintiff alleges, is patently discriminatory.

Despite the fact that the new chair of the Department of Geriatrics & Gerontology (formerly NJISA), Defendant Overbeck, reaffirmed the details of the work plan to which Rowan agreed in 2019, Dr. Pruchno was repeatedly questioned about grant writing—responsibilities not stipulated in her contract or the work plan.

In late 2023, after she complained to Rowan's Provost about her mistreatment because of her age, Rowan's actions became more hostile toward her when Defendants relegated her to a storage closet office, put all of her belongings in boxes and took away her ergonomic chair. This humiliating move was intended to ensure that Pruchno (and others) would not complain about Defendants' discrimination. As a result of these actions, Dr. Pruchno was prompted to work from home instead of the storage closet.

It is important to note here, as Defendants do in their moving papers, that after Dr. Pruchno complained about her demotion, Defendants offered Plaintiff a delayed salary reduction, contingent on her waiving any age-related claims. This act is a tacit admission that Defendants, themselves, believe that Plaintiff's claims are valid and actionable – otherwise, why condition them on a release of claims for age discrimination? Dr. Pruchno ultimately filed a complaint with the New Jersey Division on Civil Rights and an American Association of University Professors ("AAUP") grievance. Her demotion under the pretense of reduced grant work not only appears discriminatory, but is discriminatory, as she was fulfilling her work duties but was unable to secure necessary support due to age-based bias.

Defendants' retaliatory conduct did not cease after Pruchno filed her grievances or made her complaints known. Therefore, because of the retaliatory practices of Defendants, Pruchno filed the instant lawsuit on May 29, 2024. Despite the filing of same, Defendants' conduct did not improve, instead, in August 2024, Defendants materially altered Pruchno's job duties and

6

responsibilities to include teaching an in-person problem-based learning class to medical students. Defendants took this action knowing full well that Pruchno had never taught this course and was not qualified to teach this course. In response, Pruchno agreed to continue all job responsibilities she had always performed, however, she informed Defendants that, as a psychologist, it was unethical for her to teach a clinical course to medical students. Defendants filed disciplinary charges against Pruchno for job abandonment in response. Pruchno filed another grievance with the AAUP, another process which was riddled with retaliatory schemes by the Defendants.

After denying Plaintiff access to her email account, on December 23, 2024, Defendants sent Plaintiff a letter to her University email terminating her employment effective December 20, 2024.

It is important to point out that the purpose of a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the complaint pleading for sufficiency - whether it pleads facts sufficient to fill out the elements of the stated claims. Whether Defendants have a defense for those claims is irrelevant to the analysis. Defendants' argument that they had a non-discriminatory reason for taking the actions they did has no effect on whether Plaintiff has pleaded all of the elements of her claims. For these reasons and for those that follow, Defendants' Motion to Dismiss, should be denied in its entirety. The matter should proceed to discovery to allow Plaintiff to further support her claims of NJLAD Age discrimination (Count I), NJLAD Retaliation (Count II), and Aiding and Abetting (Count III).

## STATEMENT OF FACTS ALLEGED IN THE THIRD AMENDED COMPLAINT

Defendants' recital of the Complaint's asserted facts is fairly accurate with a few exceptions to several mischaracterizations, misstatements, additions, and incorrect paragraph cites. Plaintiff

7

repeats a portion of said recital here, with additions and corrections, for the convenience of the Court.

Pruchno began her employment with the University in April 2004, accepting the position of Director of Research for the New Jersey Institute for Successful Aging ("NJISA"), which was organized within the Department of Medicine. See Compl. ¶ 13. She was tenured. Compl. ¶ 13. Through 2021, Pruchno's direct supervisor was the NJISA chair, Anita Chopra, and Dr. Chopra's supervisor was Cavalieri, then-Dean of the Department of Medicine. See Compl. ¶¶ 4, 21. In 2021, Dr. Chopra stepped down as NJISA chair and Overbeck assumed the role. See Compl. ¶¶ 8, 26. Overbeck continued in that role through the remainder of the Complaint. See Compl. ¶ 8. In February 2023, Cavalieri stepped down as Dean of the Department of Medicine and Jermyn assumed the role, first on an interim basis and then on a permanent basis. See Compl. ¶ 5. Jermyn continued in that role through the remainder of the Complaint. See Compl. ¶ 5.

Lowman was the University's Provost at all times relevant to the Complaint. See Compl. ¶ 6. Burkhardt and Oh are University Human Resources professionals. See Compl. ¶¶ 3, 7.

Pruchno received a contract for her employment, which identified her as responsible "for developing, overseeing, and maintaining a schoolwide program on research in the field of aging." Compl. ¶ 14.   Her contract did not include any specific language that she was to have "grant writing" responsibilities, but she secured over six million dollars in grants for the University over the course of her tenure. Compl. ¶ 15, 17. As a result, Pruchno received repeated reviews documenting that she had exceeded her goals. Compl. ¶ 16.

In January 2019, Pruchno decided that she would be retiring in the not-too-distant future and that it would be prudent for the University to hire a successor that Pruchno would train to take

over grant writing following her retirement. Compl. ¶¶ 19-20. Pruchno called a meeting with then Dean Cavalieri and then-Chairwoman Chopra. Compl. ¶ 21. During this meeting, Pruchno told Cavalieri and Chopra that she would be happy to continue writing grants if the University provided her with a successor. Compl. ¶¶ 21-22. Cavalieri advised Pruchno that the University did not have the budget to hire someone to work alongside her. Compl. ¶ 23.

Subsequently, Pruchno and Chopra developed a work plan that focused primarily on Pruchno writing scholarly papers, developing a book about successful aging, and supporting the grant writing activities of other University faculty interested in aging. Compl. ¶ 24. Pruchno did submit an NIH grant in June 2021. Compl. ¶ 25. Pruchno did submit an NIH grant in June 2021, in the hopes that it would convince Cavalieri to reconsider developing a succession plan, but the project was not funded. Compl. ¶ 25. Otherwise, Pruchno did not write grants. See Compl. ¶ 27-28, 35.

When Overbeck became the NJISA chair in 2021, he asked Pruchno why she was no longer writing grants. Compl. ¶ 27. Pruchno told Overbeck about the joint plan with Dr. Chopra from the January 2019 meeting, and advised she would continue writing grant proposals if a succession plan was put in place. Compl. ¶ 28. Overbeck attempted but was not able to secure funding for a successor. Compl. ¶ 28. Overbeck later provided Pruchno a favorable annual performance review and agreed, in writing, to the 2019 workplan established between Pruchno and Dr. Chopra. Compl. ¶ 29.

On June 19, 2023, Pruchno was called into a meeting with Overbeck, then-Interim Dean Jermyn, Oh, and Burkhardt. Compl. ¶ 30. Pruchno was told that she would be stripped of her title as Director of Research, and she would be given the new title of Professor of Basic Science. Compl. ¶ 30. Also, during that meeting, Pruchno was told her salary would be reduced by more than 30%

9

in connection with the title change. Compl. ¶ 31. Pruchno was told that both changes would be effective July 1, 2023. Compl. ¶ 33. This salary cut was imposed on Plaintiff with 11 days notice. Compl. ¶ 32. Pruchno was told that Jermyn had decided there was no need to continue with her in the Director of Research position since Pruchno was no longer applying to grants. Compl. ¶ 34. Dr. Pruchno later received a letter from Jermyn and Oh memorializing her reduction in pay and change in title. Compl. ¶ 39. And on July 19, 2023, Pruchno was called into a meeting with Overbeck and Burkhardt to discuss developing a workplan associated with her new role. Compl. ¶ 40. Pruchno submitted the workplan later that same day but received no response. Compl. ¶ 41.

In June 2023, Pruchno's then-attorney sent a letter to Dean Jermyn complaining about the University's actions taken against her. Compl. ¶ 42. In September 2023, Pruchno met with Provost Lowman to complain regarding her position elimination and salary reduction. Compl. ¶ 43. At the meeting, Lowman told Pruchno he was not aware of the decision. Compl. ¶ 43. Lowman asked her who made the decision, and Pruchno stated she did not know. Compl. ¶ 43 Lowman also discussed his goal of developing Rowan into an R1 University.[2] Compl. ¶ 43. Lowman said he would discuss Pruchno's concerns with Overbeck and Jermyn and resolve the problem. Compl. ¶ 43.

In late October 2023, Lowman sent Pruchno a letter offering to restore her original salary for the time period from June 2023 through December 2023. Compl.

¶ 44. In order for Dr. Pruchno to consider the offer, however, she would have to sign a full waiver and release of any age-related claims that she might have against Rowan University. Compl. ¶ 45. This accommodation is a tacit admission that the Defendants knew their conduct was discriminatory because of Dr. Pruchno's age.  Compl. ¶46.  Pruchno did not sign the offer. Compl. ¶ 47. On November 20, 2023, Pruchno received a letter from Lowman nonetheless authorizing backpay for July 1, 2023 through November 30, 2023, as a "one-time payment for four-months'

notice at a manager's rate" prior to the 30% reduced salary taking effect. Compl. ¶ 51. The letter also maintained the decision to eliminate the Director of Research title, effective June 30, 2023. Compl. ¶ 52.

In December 2023, Defendants removed Prucho from her office, confiscated her ergonomic furniture, and relocated her to a storage closet. Compl. ¶ 53. In response to this humiliation, Pruchno informed Defendants that she would work from home and Defendants agreed. Compl. ¶54.

On May 29, 2024, Pruchno filed the instant lawsuit, Amended on May 30, 2024. Compl. ¶ 59.

In August 2024, Defendants sent a letter to Dr. Pruchno detailing her responsibilities for the 2024-2025 academic year to include: (1) continuing her research (2) working with students, and then adding (3) teaching an in-person problem-based learning class to medical students. Compl. ¶ 60. Defendants are fully cognizant that Dr. Pruchno does not have the qualifications to teach the problem-based course, nor was this her responsibility before filing the Amended Complaint. In fact, Dr. Purchno had never taught this in-person problem-based learning class to medical students before. Compl. ¶ 61. Dr. Pruchno agreed to undertake the continuation of her research and working with students, but informed Defendants that, as a psychologist, she believed, and still believes, that it would be unethical for her to teach a clinical class to medical students. Compl. ¶62.

On September 4, 2024, the University, through its Labor Relations Director Adam Verone, sent Plaintiff a letter charging her with discipline for job abandonment. In said letter, the University threatened that "The University has no realistic choice but to seek the termination of your employment." Compl. ¶63. The AAUP filed a second grievance on Pruchno's behalf in response

11

to the Defendants' disciplinary charges seeking her termination. Compl. ¶ 65. Defendants, again, insisted on and required Pruchno's physical attendance at the AAUP grievance hearing despite knowing that Pruchno resided in Florida, in another effort to cause Pruchno hardship. Compl. 66.

On November 22, 2024, a hearing was conducted with the AAUP and HR regarding the University's job abandonment charges. Compl. ¶ 68. On December 9, 2024, to no one's surprise, Defendants' own hearing officer summarily conclude that Plaintiff abandoned her job. Compl. ¶ 69.

On December 20, 2024, in further retaliation of Pruchno's complaints of age discrimination, filing of this lawsuit, and complaining about age discrimination, opposing unethical acts, knowing it would be devastating to Pruchno's professional career, Defendants blocked Pruchno's access to her University email account. Compl. ¶ 70. Knowing she had been cut off from its use, on December 23, 2024, Defendants sent Pruchno a letter to her University email terminating her employment effective December 20, 2024, further delaying notification of her termination. Compl. ¶72.

After, in January 2025, the AAUP filed a third grievance against Defendants because Defendants unilaterally decided to terminate Plaintiff's employment. Compl. 74. On January 21, 2025, Pruchno learned that in conjunction with Defendants' decision to retaliate against her by terminating her employment, Defendants further retaliated against her by suspending Pruchno without pay during the pendency of her latest grievance. Compl. ¶75. This is a violation of the AAUP contract to which Plaintiff and Defendants are parties. Compl. ¶76.

On or about January 29, 2025, Defendant Verona delayed the completion of Pruchno's Medicare enrollment form, which delayed her access to healthcare benefits in further retaliation to Pruchno's protected activities. Compl. ¶ 78.

12

## LEGAL ARGUMENT - THE LEGAL CLAIMS ASSERTED IN PLAINTIFF'S THIRD AMENDED COMPLAINT

In her Third Amended Complaint ("SAC"), Plaintiff alleges five causes of action which Defendants seek to dismiss through their instant motion. These causes are the following: (1) Count I – Discrimination in violation of NJLAD, N.J.S.A. § 10:5-12(a) based upon Plaintiff's age; (2) Count II – Retaliation in violation of NJLAD, N.J.S.A. § 10:5-12(d) based upon the actions Defendants took after Plaintiff complained to Provost Lowman; (3) Count III – Retaliation by Termination of Plaintiff's Employment in Violation of NJLAD, N.J.S.A. § 10:5-12(d); (4) Count IV – Retaliation Under CEPA; and (5) Count V – Aiding and Abetting in violation of NJLAD, N.J.S.A. § 10:5-12(e) for the actions in which the individual defendants engaged throughout the events of the SAC. Each one of these causes of action withstands the scrutiny of the legal standard applicable when tested by the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

I.    **The State of The Law as Applied to the Legal Claims Asserted Establishes a Complaint That Withstands Scrutiny Pursuant to Federal Rule 12(b)(6)**

The Federal Rules of Civil Procedure provide for the dismissal of a complaint (or counts therein) that fails to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings pursuant to Fed. R. Civ. P. 12(b)(6), the court must *"accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."* Kanter v. Barella, 489 F.3d 170, 177 (3d. Cir. 2007). *[emphasis added.]*

Pursuant to Fed. R. Civ. P. 12(b)(6), the moving party --- in this case Defendants Rowan, Burkhardt, Cavalieri, Jermyn, Lowman, Oh, and Overbeck --- bear the burden of demonstrating that no claim has been stated. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). They have failed to do so in their moving papers.

13

Dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead ***"enough facts to state a claim of relief that is plausible on its face."*** Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41 (1957)).  Simply put, the facts alleged must be sufficient to ***"raise a right of relief above the speculative level."*** Twombly, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of necessary elements of the plaintiff's cause of action. Id.  ***"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendants is liable for the misconduct alleged."*** Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a "probability requirement" but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S., at 678, citing Twombly, 550 U.S. at 556.

Plaintiff meets the Twombly burden by alleging the following:

(A) that Defendants were aware of her age.

(B) Defendants were aware that she was exempted from the task of seeking to secure research grants **because of her age**.

(C) Plaintiff performed the task anyway.

(D) Defendants conspired to remove, and did remove,  Plaintiff from her role and cut her compensation. This was done ostensibly because, without asking if she would, Defendants assumed that Plaintiff would not perform the task of seeking to secure research grants (because she already negotiated an exemption from that task because of her age).

14

(E) After Plaintiff complained about her treatment to Provost Lowman, and refused his offer of settlement in exchange for a waiver of her age-claims, Defendants further conspired to retaliate against Plaintiff by removing her from the large corner office (that she occupied for 20 years), relocating her to a storage closet, taking away her high-quality ergonomic suite of furniture and replacing same with a single old desk. They also relocated Plaintiff's extensive library and files that were moved from the separate library and filing rooms that once housed my possessions to her new office.

(F) After Plaintiff filed the instant lawsuit, Defendants further conspired to retaliate against her by changing and altering her responsibilities to include, for the first time, teaching an in-person problem-based learning class to medical students. When Plaintiff advised of her concerns and raised ethical issues regarding a psychologist teaching a clinical course to medical students, instead of engaging in any conversation, Defendants charged her with discipline for job abandonment (despite her complete willingness to continue her original responsibilities) and threatened to terminate her.

(G) After a third AAUP grievance, which Defendants know is a protected act pursuant to the New Jersey Conscientious Employee Protection Act, Defendants denied Plaintiff access to her University email account and subsequently terminated her via email to that same account, delaying notification of termination and the ability to complete necessary Medicare enrollment forms and benefits and retirement records.

(H) Finally, each and every individual Defendant was aware of the unlawfulness of his actions, each jointly contributed to the conspiracy to conceal the real reason behind their motivation (Plaintiff's age and her protected complaints against their unlawful conduct), and each acted regardless of such.

15

The Court's role is *not* to determine whether a plaintiff will ultimately be successful in his/her claims, but "whether the claimant is entitled to offer evidence in support of the claims" by permitting the case to continue. Id. (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3rd Cir. 1997)). In the instant case, it's clear that Plaintiff must be allowed to probe her claims, including the key holes in Defendants' alleged justifications. On its face, the complaint alleges that Defendants took the actions they took because of her age- they insisted she perform a task from which Defendant Rowan had already exempted her because of her age. There is no question that Plaintiff's claim for age discrimination survives the scrutiny the Court must apply. Second, for reasons explained below, Plaintiff's claims for retaliation and CEPA similarly survive. Finally, Plaintiff's aiding and abetting claim must also survive because of Defendants' individual and deliberate actions.

This argument is bolstered by Smith v. Millville Rescue Squad, 225 N.J. 373 (2016), where the New Jersey Supreme Court affirmed that a plaintiff need only demonstrate that age influenced the employer's decision-making process to substantiate a claim of age discrimination. In Smith v. Millville Rescue Squad, the Court underscored that circumstantial evidence, such as favorable work reviews and sudden changes in treatment of an employee, could establish a discriminatory motive if an employee within a protected class faces negative actions after disclosing an intent to retire or noting succession concerns. Here, the fact that Dr. Pruchno was told by Dean Jermyn in 2019 that the University would not fund a succession plan she considered crucial to long-term grant submissions is key. Defendants also ignore that grant-writing was never specified in her contract or employment evaluations as a required task, reinforcing Plaintiff's position that age was the true, determinative factor behind her demotion and ultimate termination. Buchholz v. Victor Printing, Inc., 877 F. Supp. 2d 180 (D.N.J. 2012), further supports that unexplained shifts in

employer expectations, especially when they relate to age, can suggest discriminatory animus under NJLAD.

## II.    Plaintiff's Complaint Pleads a Plausible Age Discrimination Claim Under NJLAD

On it's face, the first cause of action of Plaintiff's complaint, plainly pleads a plausible discrimination claim. In order to establish a prima facie case of discrimination, an employee must demonstrate that: (1) plaintiff was a member of a protected group; (2) plaintiff's job performance met the employer's legitimate expectations; (3) plaintiff was terminated or not renewed; and (4) plaintiff was replaced or the employer sought a replacement. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The New Jersey Appellate Division modified the last prong of the elements test. "The fourth element is "flexible" and "can be satisfied differently in differing factual scenarios," including: ***actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus***, preferential treatment given to employees outside the protected class, and, in a corporate down-sizing, the systematic transfer of a discharged employee's duties to other employees, or a pattern of recommending the plaintiff for positions for which he or she is not qualified and failure to surface plaintiff's name for positions for which he or she is well-qualified. A plaintiff might also rely upon the fact that the defendant, following plaintiff's termination, continued to seek applicants to fill the position, or, more generally, upon the timing or sequence of events leading to the plaintiff's termination." Cohen v. Univ. of Med. & Dentistry of N.J., DOCKET NO. A-1300-12T1, (App. Div. Dec. 30, 2013) (emphasis added).

Defendants attempt to persuade this Court that there is no direct evidence of discrimination because Plaintiff's Complaint states that Jermyn eliminated her position as Director of Research because she was no longer applying for research grants. Defendants refer to paragraph 34 of Plaintiff's Complaint to support this argument, however, Defendants' reliance on one portion of

17

this paragraph, to the exclusion of the entirety of that paragraph and Plaintiff's Complaint are simply an attempt to mislead this Court and mischaracterize the facts as plead, which Defendants admittedly assume and accept for purposes of the their motion. See Defendants' Brief, footnote 1. What Plaintiff has successfully pleaded with sufficiency is that her role as Director of Research NEVER included grant writing. This responsibility and task were never required of the Plaintiff and were explicitly excluded from her responsibilities in January 2019 due to her age.

Here, Dr. Pruchno clearly pleads that she was part of a protected group because of her age; she also pleads that she performed well and that she received favorable performance appraisals. Dr. Pruchno also pleaded that she was summarily removed from her position because of her age. Dr. Pruchno successfully pleaded that, after Defendants unilaterally removed her from her position, she received a 30% reduction to her salary (a demotion). With regard to the fourth element, Dr. Pruchno clearly pleads that Defendants' actions in selecting the one task she was exempted from performing because of her age as the criterion used to remove her from the position of Director, *can be viewed as reflecting a discriminatory animus*. Id. Further, Defendants' conduct did not end there, Defendants then sought to discipline and terminate Dr. Pruchno by forcing an entirely new clinical course into her curriculum, mere weeks prior to the start of the semester, knowing she was not qualified and had never taught a course of that nature.

As a result, Plaintiff has plausibly pleaded all four elements required to establish a claim for age discrimination under the NJ LAD.

III.    **Plaintiff's Complaint Pleads Plausible Retaliation Claims Under NJLAD**

The second and third causes of action of Plaintiff's complaint, plainly plead plausible retaliation claims on its face. In order to establish a prima facie case of retaliation, an employee

must demonstrate that: (1) she has engaged in a protected activity known by the employer; (2) the employer took adverse employment action against her at the time, or after, the protected activity took place; and (3) her participation in the protected activity caused the adverse employment action. Model Jury Charges (Civil), 2.22, Unlawful Employment Practices under the New Jersey Law Against Discrimination (LAD) — Retaliation (N.J.S.A. 10:5-12(D) and -12(R)). Moreover, the New Jersey Supreme Court held that the retaliation cause is typically independent of the action about which the Plaintiff complained so long as the Plaintiff had a good faith and reasonable belief that the Plaintiff's right to be free from discrimination on the basis of age was violated. Id. Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354, 373 (2007).

### A.    Plaintiff's Allegations About Changes to Her Constitute an Adverse Employment Action.

Defendants argue that Plaintiff's alleged that the physical office change, removing her personal effects, and subsequent disciplinary charges are insufficient to constitute an adverse employment action under NJLAD. They assert that these acts are either routine adjustments based on business requirements or unrelated to Plaintiff's prior complaints about age discrimination.

However, moving her to an isolated office space—termed a "storage closet" by Plaintiff— and removing ergonomic furniture necessary for her work does qualify as adverse action, especially given her established Director position and years of academic excellence. NJLAD retaliation claims require that the employer's actions be likely to deter a reasonable person from filing a complaint. Here, Plaintiff's claim draws directly from Prager v. Joyce Honda, Inc., 447 N.J. Super. 124 (App. Div. 2016), which recognizes that demotions, adverse title changes, or relocations that degrade one's work environment or status can be deemed materially adverse

actions. Prager, underscores that adverse employment actions need not involve salary changes alone but can include changes that interfere with a worker's professional stature or duties, especially when done in response to complaints.

Under the NJLAD, an "adverse employment action" is one "sufficiently severe or pervasive to have altered Plaintiffs conditions of employment in an important and material manner." Murray v. Cty. of Hudson, Civil Action No. 17-2875 (JXN) (LDW), 2023 U.S. Dist. LEXIS 184298, at *42-43 (D.N.J. Oct. 13, 2023) quoting El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 176 (App. Div. 2005). However, "without a loss of rank or reduction in pay, the personnel decision to change shifts or assignments or to follow the disciplinary or leave process are not the adverse employment actions envisioned by the NJLAD." Murray, 2023 U.S. Dist. At 42-43.

Defendants contend that the first adverse employment action alleged was the transfer of Plaintiff's workspace to a storage closet. However, Defendants' unilateral decision to remove Plaintiff from her office came after Defendants also unilaterally decided to remove her from her position and title of Director AND decrease her salary by 30%. Defendants cite to the decision in Bernstein v. City of Atl. City, to support their argument that neither "the relocation of her work space. . . or the filing of disciplinary charges, establishes an adverse employment action." However, consistent with the complete language of Murray, the court in Bernstein further stated that, "[n]either of these two actions were "'serious and tangible enough to alter [plaintiff's] compensation, terms, conditions, or privileges of employment.'" Bernstein v. City of Atl. City, Civil Action No. 08-cv-3796 (NLH), 2012 U.S. Dist. LEXIS 44849, at *40 (D.N.J. Mar. 30, 2012). See Langley v. Merck & Co., Inc.,, 186 Fed.Appx. 258, 260 (3d Cir. 2006) (citations omitted). The Bernstein, court only bolsters Plaintiff's claims further by drawing additional

distinctions between that and Plaintiff's case at bar. The Bernstein court states, "[e]ven if these two actions could be considered adverse, plaintiff has not shown a "temporal link" between the protected activity and the retaliation. As the Court stated in its earlier Opinion, plaintiff has failed to show how incidents that occurred years apart and under different mayoral administrations are causally linked." Bernstein, 2012 U.S. Dist. LEXIS 44849, at *40.

Here, not only has Plaintiff sufficiently pled the removal of her title and position as Director, but she has also plead a significant decrease in her salary, her physical removal from her office, significant and material alterations to her job responsibilities without notice or discussion, disciplinary actions, denial of access to her University email account, termination of employment, and an interference with retirement and health benefits following her termination through Defendants' own conduct. Not only has Plaintiff pled single counts of "severe and pervasive" adverse employment actions, but she has pled numerous acts, one after another. These adverse employment actions included loss in rank, loss in title, loss in salary, and significant embarrassment and humiliation to a tenured employee with a stellar record all immediately prior to the agreement she would no longer apply for Research Grants due to her age.

**B.    The University's Disciplinary Actions Constitute Adverse Employment Actions.**

Here, the timing of Defendants' actions immediately after her rejection of Provost Lowman's offer to pay Plaintiff to waive her age-related claims demonstrate retaliation. Defendants overlook the significance of Plaintiff's removal from meaningful research responsibilities, which clearly affects the terms and conditions of her employment. In Murray v. Cnty. of Hudson, 2023 WL 6785081 (D.N.J. Oct. 13, 2023), the court found that NJLAD retaliation claims can succeed when employer actions cause "a serious and material" change in the conditions

21

of employment that are likely to deter a reasonable worker from filing complaints. The complaint clearly hints that punishing Plaintiff for complaining, and deterring others from complaining about discrimination was the likely intent of these actions.

Here, Dr. Pruchno clearly pleads that she engaged in a protected activity by complaining about Defendants' discriminatory conduct to Provost Loman. Second, Defendants immediately took adverse action and sustained that adverse action- Plaintiff pleads that Defendants removed her from her office, stuffed her into a storage closet office, dismantled her library and placed her materials in storage and took away her ergonomic furniture. Plaintiff further supports this element by alleging that Defendants filed unfounded disciplinary charges after she filed her lawsuit.

Defendants, in footnote four of their brief, mischaracterize the events of September 2024. While Defendants, all Administrators with knowledge of the law, were able to refrain from making explicit discriminatory comments to and against Plaintiff, their combined discriminatory actions which all took place after the agreement that Plaintiff would not apply for additional grants due to her age, did not occur in a bubble. It was these actions which led to Plaintiff's complaints which ultimately led to Defendants, creatively so, implementing new responsibilities on Plaintiff to further discriminate against her and force her out. Plaintiff's complaint does not plead that she formally defied instructions, but instead pleads that Plaintiff engaged in communication regarding the ethics surrounding a psychological professor teaching clinical courses to medical students. It was in response to this complaint that Defendants instituted disciplinary charges.

22

C.    **Defendants' Assignment of Plaintiff to Teach a Brand New Clinical Course to Medical Students Constitutes Impermissible Retaliatory Actions by the University**

Defendants rely on a document outside the four corners of Plaintiff's Complaint, namely The Role of the PBL Faculty Facilitator at Rowan-Virtual School of Medicine, provided by Defendants as Exhibit A, arguing it is "integral" and/or "explicitly relied upon in the complaint." While Plaintiff disagrees with both, the document is actually more helpful for the Plaintiff, however, Plaintiff did not have access to this document prior to the receipt of Defendants' instant motion.

The role of PBL Faculty Facilitator, "is held by both basic scientists and clinicians" and "consists of two parts": the first is "PBL Block support" and the second is an "[a]dditional Component: *Either* grading of Medical Scholarship course assignments (basic scientists) or participation in SimLab procedures." The overview goes on to explain that "*[m]ost* faculty have a 0.3 FTE associated with the PBL track, though FTE varies widely. *Most* faculty will have some of their time allotted to assist with evaluating Medical Scholarship assignments or occasionally supporting procedures in the SimLab." By the language of this document, it is utterly clear that Plaintiff is considered a "basic scientist" who would grade medical scholarship course assignments in her role as PBL Faculty Facilitator. The overview also makes clear that this "role" does not apply to all faculty, and does not apply to all faculty consistently, through the use of the term "most" as it applies to faculty.

A thorough reading of the Role and its purpose makes clear that this type of course, like any course being taught at a university, which requires students to simulate, "taking a medical history, performing a physical examination of the patient, and ordering diagnostic tests," would

23

require careful planning, preparation, design, research, and structure to form a comprehensive curriculum, especially for a professor who has never taught a course such as this.

It is entirely unreasonable to presume that a University such as Defendant Rowan would provide little to no opportunity for a Professor to prepare a curriculum for an entirely new course. It is also unreasonable for Defendants to contend that after 20 plus years of teaching and never once requiring Plaintiff to teach one of these courses that Defendants randomly chose to assign Plaintiff this specific responsibility. The overview of the role makes clear that not every faculty is assigned, which is also evidenced by the fact that Plaintiff had never been assigned to teach one of these courses, until August 2024, after Plaintiff instituted this lawsuit. The role also makes clear that not every faculty member teaches the clinical courses or supports in SimLab. Instead, Defendants, knowing Plaintiff was not qualified and lacked experience, assigned her these responsibilities. While Defendants state that the block directorship portion includes "supporting in SimLab," Defendants fail to highlight that, pursuant to the overview of the role, basic scientists either grade medical scholarship course assignments *or* participate in SimLab. There is not even a scintilla of evidence captured within the Defendants' Exhibit which support the Defendants' decision to force Plaintiff to teach the clinical course. The only reason, which Plaintiff sufficiently pleads, for the Defendants' unilateral choice to force the course on Plaintiff is to retaliate against her for filing her lawsuit less than two months prior.

Lastly, Defendants' reliance on <u>Shepherd v. Hunterdon Developmental Ctr.</u>, is misplaced. 174 N.J. 1 (2002). Plaintiff was not "unhappy" or responding emotionally to Defendants' adverse employment action. Plaintiff pleaded that she voiced her concerns over her qualifications and the ethical implications of her teaching the course. In response, as argued above, Defendants took additional retaliatory actions against Plaintiff and disciplined her for voicing same.

24

**D.      Plaintiff has Sufficiently Plead a Prima Facie Claim of Retaliatory Discharge Due to Defendants' Termination due to her Age and her Filed Complaints**

After a strong of discriminatory conduct and a multitude of adverse employment actions, Defendants' ultimate, significant, and clearest form of adverse employment action occurred when Defendants terminated Plaintiff. Defendant has attempted, and failed, to make arguments that the demotion, the salary decrease, the discipline, the storage closet, and the impromptu clinical course were not adverse employment actions. However, Plaintiff's termination came mere weeks after the hearing on her second AAUP complaint. In conjunction with that termination was also the Defendants' decision to deny Plaintiff access to her University email, which ultimately kept her from receiving timely notice of her termination and the opportunity to timely respond for her benefits.

Finally, Plaintiff successfully alleges that all the above retaliatory actions would not have happened but for her complaints about Defendants' discriminatory treatment and the filing of her lawsuit to protect her rights under the NJ LAD.

**IV.    Plaintiff's Complaint Pleads a Plausible CEPA Claim**

The Legislature enacted CEPA to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." Dzwonar v. McDevitt, 177 N.J. 451, 461 (2003), citing Abbamont v. Piscataway Township Bd. of Educ., 138 N.J. 405, 431 (1994). "The statute 'shields an employee who objects to, or reports, employer conduct that the employee reasonably believes to contravene the legal and ethical standards that govern the employer's activities.'" Allen v. Cape May Cty., 246 N.J. 275, 289 (2021) quoting Hitesman v. Bridgeway, Inc., 218 N.J. 8, 27 (2014).

25

The statute provides in relevant part:

An employer shall not take any retaliatory action against an employee because the employee does any of the following:

a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:
(1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . .
c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
(1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ;
[or]
(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J.S.A. 34:19-3.

A plaintiff bringing a CEPA claim must demonstrate: (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing activity" described in N.J.S.A. 34:19-3[]; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. Tegler v. Glob. Spectrum, 291 F. Supp. 3d 565, 580 (D.N.J. 2018), citing Dwonzar, 177 N.J. at 462.

"CEPA is remedial legislation and therefore 'should be construed liberally to effectuate its important social goal.'" Dzwonar, 177 N.J. at 463, quoting Abbamont, 138 N.J. at 431. A plaintiff bringing a CEPA claim is not required to prove their employer *actually* violated any law, rule, regulation, or clear mandate of public policy to be successful; the plaintiff must simply "show that he or she 'reasonably believes this to be the case.'" Id. at 462, quoting Estate of Roach v. TRW, Inc., 164 N.J. 598, 613 (2000). A plaintiff "must set forth facts that would support an objectively reasonable belief that a violation has occurred." Dzwonar, 77 N.J. at 464.

As to the first element of the prima facie case, "[a]lthough CEPA does not require that [a] plaintiff set forth facts that, if true, would constitute a violation of [the law or public policy identified], it does require a close relationship between [his or] her claims and that [law or policy]." Tegler, 291 F. Supp. 3d at 581, citing Dzwonar, 177 N.J. at 467. "A plaintiff who brings a claim pursuant to N.J.S.A. 34:19-3(c) need not show that his or her employer or another employee actually violated the law or a clear mandate of public policy. Instead, the plaintiff simply must show that he or she 'reasonably believes' that to be the case." Id. (internal citations omitted). While "the trial court must identify a statute, regulation, rule, or public policy that closely relates to the complained-of conduct," the plaintiff need not "allege facts that, if true, actually would violate that statute, rule, or public policy." Id. at 463.

Here, the law Plaintiff pleads and claims that she reasonably believed Defendants violated is the NJLAD, prohibiting discrimination based on age and retaliation for complaining of discrimination based on age. Within her Complaint, Plaintiff pleads numerous allegations of age discrimination from 2019 through her 2024 termination. During the pendency of Defendants' discriminatory conduct, Plaintiff made her complaints known by making complaints to Defendants directly and filing three separate complaints with the AAUP.

Plaintiff engaged in a "whistle-blowing" activity when she made direct complaints to the individual Defendants after her demotion and pay reduction, complaining that these actions stemmed from her alerting the University that she would be retiring soon due to her age. Plaintiff made these complaints even more known to Defendants in September 2023, to which Defendants responded with an offer of a six-month sabbatical and a delay in the salary reduction if Plaintiff agreed to waive and release any age related claims she may have against the University. Plaintiff further continued to Complain about Defendants' discriminatory conduct as their behavior

27

worsened as Plaintiff complained. After Plaintiff was stripped of her title and role in November 2023, and taken from her office, her books, her library, and ergonomic furniture in December 2023, Plaintiff filed the instant lawsuit against Defendants for age discrimination. In retaliation for the lawsuit, Defendants penalized Plaintiff by forcing upon her the responsibility of teaching a course she had never taught and believed she was unqualified for. After voicing these concerns, Defendants filed disciplinary actions against her and ultimately terminated her. Plaintiff has sufficiently plead countless examples of direct complaints to individuals Defendants, grievances with the AAUP, and the instant lawsuit, which was amended to include CEPA claims after Defendants retaliated against the Plaintiff in August 2024 and December 2024. These allegations are well-within the statute of limitations. "'When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication' virtually always 'constitutes the employee's opposition to the activity.'" Tegler, 291 F. Supp. 3d at 588, citing Crawford v. Metro. Gov't of Nashville and Davidson Cty., 555 U.S. 271, 276 (2009).

Defendants continue to argue that there are no adverse actions pled, for the reasons already stated and briefed at length, Plaintiff argues that there are many adverse employments actions pled within Plaintiff's Complaint.

Lastly, the "Third Circuit allows a plaintiff to 'rely on a broad array of evidence to demonstrate a causal link between his protected activity and the adverse action taken against him.'" Tegler, 291 F. Supp. 3d at 289, Gillyard v. Geithner, 81 F. Supp. 3d 437, 443 (E.D.Pa. 2015) (citing Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007). "Where the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof, such

28

as actual antagonistic conduct or animus against the employee, or other types of circumstantial evidence, such as inconsistent reasons given by the employer for terminating the employee or the employer's treatment of other employees, that give rise to an inference of causation when considered as a whole." Id. Citing Marra, 497 F.3d at 302.

In the matter at bar, in June 2023, about four years after Plaintiff and Defendant Rowan agreed Plaintiff would not write grants due to her age, Defendants conspired to remove Plaintiff from the role of Director by requiring of her the very task mutually agreed would not be required of her because of her age. Plaintiff had tenure and a pristine record prior to June 2023, when Defendants made the decision to remove her due to her age. June 2023, when the Defendants unilaterally decided to require grant writing from the Plaintiff knowing she had already been exempt from this task, was the catalyst for the entirety of the last two years. Plaintiff had her role and title stripped, her salary significantly reduced, her office taken, her furniture taken, her library and books removed, a brand new clinical course cast upon her, disciplinary actions, threat of termination, denial of access to her email, and termination. Every grievance with the AAUP and Complaint and subsequent Amendment before this Court have been inextricably tied to the Defendants' decision in June 2023 and every single adverse employment action and discriminatory conduct since that day. Every allegation in Plaintiff's Complaint is tied to the initial act of discrimination by the Defendants in order to remove Plaintiff from her Director role due to her age.

## V.    Plaintiff's Complaint Pleads a Plausible Aiding and Abetting of Age Discrimination Claim Under NJLAD

A Plaintiff establishes a prima facie claim of aiding and abetting against a defendant under the New Jersey Law Against Discrimination by showing the following elements: (a) The party whom the defendant aids must perform a wrongful act that causes injury, (2) The defendant must

be generally aware of his or her role as part of the overall illegal or tortious activity at the time he or she provides the assistance, and (3) The defendant must knowingly and substantially assist the principal violation. Tarr v. Ciasulli, 181 N.J. 70, 84 (2004).

A claim for aiding and abetting "requires active and purposeful conduct." Cicchetti v. Morris Cnty Sheriff's Off., 194 N.J. 563, 594 (2008). The analysis focuses in on "whether a defendant knowingly gave substantial assistance to someone engaged in wrongful conduct, not on whether the defendant agreed to join the wrongful conduct." Podias v. Mairs, 394 N.J. Super. 338, 353 (App. Div. 2007).

Defendants argue that Plaintiff's aiding and abetting claims fail because neither Burkhardt nor Oh, as HR representatives, were directly involved in the demotion decision. They further argue that Cavalieri, Overbeck, and Lowman merely implemented Rowan's policies and thus did not "substantially assist" any discriminatory act.

However, HR's role went beyond mere implementation and aligns with Hurley v. Atlantic City Police Dep't, 174 F.3d 95 (3rd Cir. 1999), where aiding and abetting claims were sustained when HR involvement materially supported discriminatory actions. NJLAD holds HR officials liable when they facilitate discriminatory practices, as is evident here: Burkhardt, oh, and others contributed to adverse employment actions by organizing and overseeing Plaintiff's office reassignment, salary reduction, and the punitive work environment changes. Under Hurley and Failla v. City of Passaic, 146 F.3d 149 (3d Cir. 1998), HR personnel who enable or actively participate in actions adversely affecting protected employees' rights can be liable for aiding and abetting. Plaintiff pleads that Defendants' ongoing oversight and implementation of adverse actions, as well as offering advice and consultation to the decision-makers, demonstrate complicity and substantial assistance, thus meeting NJLAD's aiding and abetting threshold. Further, it appears

that all of the named Defendants conspired to achieve the goal of ousting Plaintiff. They relied upon each other's advice and counsel when plotting the plan to discriminate against Dr. Pruchno and executing on it.

### A. Defendants' Stated Justifications Are Pretextual, Suggesting Discriminatory Motive

Defendants assert that Plaintiff's reduced grant writing efforts somehow justify her demotion and are part of Rowan's broader initiative to improve research metrics. They contend that Plaintiff's failure to apply for grants impacted Rowan's mission and led to her reassignment from a research-focused role.

However, Plaintiff maintains that the absence of a grant-writing requirement in her job description, as well as the express exemption from that task that Rowan conferred upon her in 2019 because of her age, undermines this argument, suggesting that this justification is a pretext for age-based bias. Plaintiff's long record of superior productivity, which includes six million dollars in NIH-funded research grants, challenges Defendants' claim. Under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), an employee's established success, followed by sudden demotion based on previously unstated or irrelevant metrics, supports a finding of pretext. The timing and nature of her demotion, after her request for succession planning based on her age, align with El-Sioufi v. St. Peter's Univ. Hosp.,382 N.J. Super. 145 (App. Div. 2005), where adverse actions were deemed pretextual when unsupported by contractual obligations.

### B. The Conditioned Offer of Pay Restoration Suggests Awareness of Wrongdoing and Constitutes Retaliation

Defendants argue that the offer to restore Plaintiff's pay for six months following her demotion was intended to ameliorate hardship rather than admit liability, dismissing the requirement that she sign a waiver of age-related claims as a standard protocol.

31

However, evidence shows that conditioning pay restoration on a waiver of any age-related claims reflects an attempt to cover discriminatory and retaliatory practices. Under <u>Cicchetti v. Morris County Sheriff's Office</u>, 194 N.J. 563 (2008), this "offer" constitutes coercion, which is itself a form of retaliation. By withholding fair compensation unless Plaintiff waived her rights, Defendants sought to silence her objections. The court in <u>Cicchetti</u> found that coerced waivers of claims can suggest retaliatory intent, particularly when they follow disputed adverse actions. Plaintiff argues that this conditional offer indicates awareness of wrongdoing, and, instead of correcting the harm, attempts to strip her of legal recourse.

These arguments substantiate Plaintiff's claims of age discrimination, retaliation, aiding and abetting, warranting denial of the motion to dismiss in support of her NJLAD claims.

## CONCLUSION

Based upon the above legal and factual arguments, Defendant's Motion to Dismiss must be denied.

*MARK | LAVIGNE, LLC*
675 Morris Avenue, Suite 300
Springfield, New Jersey 07081
T: (973) 845-6606 (Main)
By:

_____
Taylor Ruggieri, Esq. (243042019)
Edward J. Herban, Esq. (038561998)
Jamison M. Mark, Esq. (042392000)
jmark@newjerseyattorneys.com
eherban@newjerseyattorneys.com
*Attorneys for Plaintiff Rachel Pruchno*

32