## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RACHEL PRUCHNO, <br><br> Plaintiff, <br><br> v. <br><br> ROWAN UNIVERSITY *a/k/a Rowan-Virtua School of Osteopathic Medicine*; KEITH BURKHARDT; THOMAS CAVALIERI; RICHARD JERMYN; ANTHONY LOWMAN; HENRY OH; KEVIN OVERBECK; ABC COMPANIES 1-10; JOHN and JANE DOES 1-10, <br><br> Defendants. | **No. 1:24-cv-06619-ESK-EAP** |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)

**SAUL EWING LLP**
James A. Keller (Attorney ID: #020991996)
Katherine Ellen Chrisman (Attorney ID: #332042022)
650 College Road East, Suite 4000
Princeton, NJ 08540-6603
T: (609) 452-3129
F: (609) 452-3122
james.keller@saul.com
katherine.chrisman@saul.com

Of counsel and on the brief:
James A. Keller, Esq.

On the brief:
Katherine Ellen Chrisman, Esq.

56105566.2

# TABLE OF CONTENTS

**Page**

**I.   REPLY TO PLAINTIFF'S PRELIMINARY STATEMENT** ......................1

**III.  LEGAL ANALYSIS**............................................................................2

**A.  Plaintiff Fails to Plausibly Plead a Prima Facie Claim of Age Discrimination Under the NJLAD Because She Has Not Alleged Facts That Employment Decisions Were Made Based upon Age**. .....................................2

**B.  Plaintiff Fails to Plausibly Plead any Claim of Retaliation**. .......................5

**C.  Plaintiff Fails to Plead a Plausible Claim of CEPA Where She Did Not Specify Any Law that Rowan Allegedly Violated**...............................................8

**D.  Plaintiff Fails to Plausibly Plead a Claim of Aiding Abetting Because She Has Failed to Specify Particular Discriminatory Conduct on the Part of Individual Defendants.** ..................................................................................10

**IV.   CONCLUSION** ......................................................................................12

56105566.2

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bendetsen v. United Airlines, Inc.*, No. 23-01553 (JXN) (MAH), 2025 WL 942963 (D.N.J. March 26, 2025) ...............................................................................11

*Failla v. City of Passaic*, 146 F.3d 149 (3d Cir. 1998).............................................10

*Gardner v. U.S. Food Service, Inc.*, No. 08-CV-5381 (DMC), 2010 WL 1050168 (D.N.J. March 19, 2010) ................................................................................3

*Hurley v. Atlantic City Police Dep't*, 174 F. 3d 95 (3rd Cir. 1999) ..................10, 11

*Johnson v. Penske Truck Leasing Co.*, 949 F. Supp. 1153 (D.N.J. 1996).................4

*Jones v. Jersey City Med. Ctr.*, 20 F. Supp. 2d 770 (D.N.J. 1998).........................11

*McDonnell Douglas v. Green*, 311 U.S. 792 (1973) ..................................................3

*Murray v. Cty of Hudson*, Civil Action No. 17-2875, 2023 WL 6785081 (D.N.J. Oct. 13, 2023) ..........................................................................................6, 7

*Teglar v. Global Spectrum, Inc.*, 291 F. Supp .3d 565 (D.N.J. 2018).....................11

**STATE CASES**

*Clowes v. Terminix Inter., Inc.*, 109 N.J. 575 (1988) .................................................3

*Dzwonar v. McDevitt*, 177 N.J. 451 (2003).................................................................8

*Mehlman v. Mobil Oil Corp.*, 153 N.J. 163 (1988) ..................................................10

*Zive v. Stanley Roberts, Inc.*, 182 N.J. 436 (2005) ................................................2, 3

**STATE STATUTES**

CEPA...............................................................................................................*passim*

Labor Management Reporting Disclosure Act .......................................................8

Defendants Rowan University ("Rowan"), Keith Burkhardt ("Burkhardt"), Thomas Cavalieri ("Cavalieri"), Richard Jermyn ("Jermyn"), Anthony Lowman ("Lowman"), Henry Oh ("Oh"), and Kevin Overbeck ("Overbeck") (Burkhardt, Cavalieri, Jermyn, Lowman, Oh, and Overbeck collectively referred to as the "**Individual Defendants**") (Rowan and the Individual Defendants together referred to as "**Defendants**"), by and through their counsel Saul Ewing LLP, submit this Reply Brief in support of Defendants Motion to Dismiss the Third Amended Complaint of Plaintiff, Rachel Pruchno ("**Plaintiff**").

## I.     REPLY TO PLAINTIFF'S PRELIMINARY STATEMENT

As an initial matter, the four page "Preliminary Statement" in Plaintiff's Opposition Brief should be discounted, if not disregarded. It notably does not cite to actual averments in the Third Amended Complaint, but instead reads as the closing argument of counsel. Moreover, that "Preliminary Statement" avers, among others, the following "facts" that are not contained in the actual Third Amended Complaint:

- Defendants assumed that Plaintiff would not perform the task of grant writing "because of her age." Pl's Br. in Opp. to Def.'s Mot to Dismiss ("Pl's Br.") 5.

- Defendants "demoted her and took away her pay without even consulting with her whether she would perform the task." *Id.* at 5.

- Defendants "knew they had to conceal their discriminatory intention" and "resurrect[ed] the grant writing task as a requirement for the job of Director knowing the history of why it was not." *Ibid.*

1

Defendants highlight these particular snippets from Plaintiff's Preliminary Statement because they are not only improperly set forth for the first time in an Opposition Brief, but they also directly conflict with Plaintiff's own pleading. For example, Plaintiff herself avers that she wrote grants in her position as Research Director and consented to same throughout her tenure in that position. *see* Pl's Third Amended Complaint ("Compl." ¶¶ 19-25):

- "Because of [Plaintiff's] imminent retirement due to her age and the length of the grant writing process, **she believed that it would be prudent to hire a successor . . . to take over the grant writing** . . ." Pl's Compl. ¶ 20. (Emphasis added).

- As such, Plaintiff "called a meeting with Dean Cavalieri and Anita Chopra, M.D., to discuss plans for . . . future NIH-grants" where she stated she would "be **happy to continue writing grants** but that a succession plan was necessary." *Id.* ¶¶ 21-22. (Emphasis added).

- Dr. Pruchno then "followed the work plan" developed by Dr. Chopra and Dr. Pruchno and "**submitted an NIH grant** . . . in June 2021." *Id.* ¶¶ 24-25. (Emphasis added).

## II.   LEGAL ANALYSIS

### A.   **Plaintiff Fails to Plausibly Plead a Prima Facie Claim of Age Discrimination Under the NJLAD Because She Has Not Alleged Facts That Employment Decisions Were Made Based upon Age.**

As an initial matter, Plaintiff fails to cite to any legal authority suggesting that a claim of discriminatory termination based upon age under the New Jersey Law Against Discrimination ("NJLAD") can proceed when there is no contention that the employer sought someone else to perform the same work after Plaintiff left. *See Zive*

2

*v. Stanley Roberts, Inc.*, 182 N.J. 436, 450 (2005) (requiring that a plaintiff plead that the employer sought someone else to perform the same work after [she] left).[1] That alone dooms Plaintiff's NJLAD age discrimination claim.

For example, while Plaintiff cites *Cohen v. Univ. of Med. and Dentistry of N.J.* as supporting her claim, it actually confirms why dismissal is appropriate. In *Cohen*, the Appellate Division reversed the trial court's grant of summary judgment for the employer predicated upon the fourth element for improper termination based upon age discrimination—namely, whether the plaintiff had been replaced by a younger faculty member. *See* No. A-1300-12T1, 2013 WL 6839509, at *2, 4. The Appellate Division acknowledged that this was a core component of a NJLAD claim, but found that Plaintiff had established that she was replaced by someone younger by producing certifications that the plaintiff's teaching responsibilities were assumed by faculty members who were younger than her. *See ibid.* In other words, *Cohen* confirms the import of pleading the existence of a younger replacement hire. *See Gardner v. U.S. Food Service, Inc.*, No. 08-CV-5381 (DMC), 2010 WL

---

[1] Plaintiff cites to a "failure to hire" methodology set forth in *McDonnell Douglas v. Green*, 311 U.S. 792, 802 (1973), at Page 17 of her Opposition Brief, but that does not apply to a termination analysis. *See Clowes v. Terminix Inter., Inc.*, 109 N.J. 575, 596-597 (1988) (noting that *McDonnell Douglas* involved an alleged discriminatory failure to hire, and further articulating that discriminatory discharge cases are established by proof of the following "(1) that [s]he was in the protected [] group, (2) that [s]he was performing his job at a level that met his employer's legitimate expectations, (3) that [s]he nevertheless was fired, and (4) that (the employer) sought someone to perform the same work after [s]he left.").

3

1050168, at *3 (D.N.J. March 19, 2010) (granting a motion to dismiss Plaintiff's age discrimination claim where the plaintiff alleged that unlawful employment actions were taken based upon his age, however, he failed to allege that a sufficiently younger person filled his position following termination). Here, Plaintiff has not pled a replacement, and as such, she has failed to make out a prima facie claim of age discrimination tied to her "termination."

Nor has Plaintiff brought forth any case law that would support her contention that prior, favorable performance appraisals somehow are indicative of being discriminated against due to age. *See* Pl's Br. 18. *See generally Johnson v. Penske Truck Leasing Co.*, 949 F. Supp. 1153, 1175-76 (D.N.J. 1996) (finding that a plaintiff's reliance on favorable past appraisals failed to "rebut or cast doubt" upon the proffered reason for the adverse employment decision because the decision was not based on alleged poor work performance). Here, Plaintiff's references to past positive work reviews are unrelated to the bases for her termination. Plaintiff was not and does not allege that she was terminated for poor past performance – she was terminated for her unwillingness to perform her newly assigned work duties.

Plaintiff's allegations regarding pretext are similarly unavailing. Plaintiff cannot allege via an opposition brief—in contradiction to Plaintiff's own pleadings—that the alleged "plan" for Plaintiff to no longer write grants was merely a "Machiavellian maneuver" to cover up Defendants' alleged age discrimination.

4

*See* Pl's Br. at 5. Plaintiff cannot contend on the one hand that grant writing was not a part of her job description as Director of Research, and on the other hand reference in her actual complaint multiple times that she wrote grants, and even that she factored the length of the grant process into her plan for retirement from that position. *See* Pl's Third Amended Complaint ("Compl.") ¶¶ 19-22; 34.

Based on the foregoing, and for all of the reasons contained in Defendants' Moving Brief, Count I of the Complaint should be dismissed.

### B.    Plaintiff Fails to Plausibly Plead any Claim of Retaliation.

Plaintiff has similarly failed to adequately plead her claim of retaliatory termination. Significantly, none of the case law submitted by Plaintiff in support of her retaliation claims support her contention that changes of conditions of employment she alludes to—including the change in office space and furniture—constitute adverse employment actions. In *Prager v. Joyce Honda, Inc.*, cited by Plaintiff, the Court found that the two written warnings issued to the plaintiff after she engaged in a protective activity did not produce "injury or harm." 447 N.J. Super. 124, 139-140 (2016). Just as no injury was found to have occurred in *Prager*, Plaintiff here alleges no cognizable injury and her reliance on *Prager* is misplaced. If actual written warnings do not suffice to cause harm, less or different furniture does not, either.

5

Plaintiff's reference to *Murray v. Cty of Hudson* is similarly inapposite to her case. *Murray* is an action by former corrections officer Murray and former Lieutenant Ortiz, against the County of Hudson and the former Deputy Director of the Hudson DOC, Eady. No. 17-2875, 2023 WL 6785081, *15-16 (D.N.J. Oct. 13, 2023). Plaintiffs allege retaliation due to their union activities. *Id.* at *2.  Plaintiffs allege that Eady submitted their names to the Ku Klux Klan to harm their reputation, and they received harassing phone calls. *Ibid.* Eady recorded several calls between corrections officers and their union in 2012, and he was convicted of wiretapping. *Id.* at *3. Ultimately, Murray retired early due to emotional distress, whereas Ortiz was terminated. *7, 9.

The Court found that Plaintiff Ortiz's retaliation claim failed where he did not satisfy the requirement for a "causal link" between his protected activity and his termination. *Id.* at *15-16. Ortiz was the subject of disciplinary actions in 2013 and 2014 and terminated from employment in 2015 for excessive absenteeism and abandonment. However, he failed to demonstrate that the disciplinary action was attributed to retaliatory motives or temporally proximate to any protected activity. *Id.* at *16.[2] Like *Pruchno's* circumstances, the reason for Ortiz's termination was

---

[2] The Court also found that Ortiz was precluded from asserting retaliation or discrimination due to union activity in an affirmative civil claim, where he had already raised this as an affirmative defense to the disciplinary action, and the argument was rejected. *See Murray v. Cty of Hudson*, Civil Action No. 17-2875, 2023 WL 6785081, *15 (D.N.J. Oct. 13, 2023)

6

unrelated to any of the defendants' alleged misconduct, and there lacked temporal proximity between the protected activity and his termination.

Plaintiff Murray, on the other hand, did state a causal connection sufficient to constitute a prima facie retaliation claim, but for reasons entirely distinct from Pruchno's situation. *See Id.* at *16. Namely, the Court found that criminal acts of interference (wiretapping by a Deputy Director) were causally linked to Murray's separation from employment. *Ibid.* Indeed, "so great was the emotional distress caused by Eady . . . that Plaintiff Murray was ultimately determined to be totally and permanently disabled from continuing to perform the duties of a corrections officer **due to the actions of the Defendants**." *Id.* at *8 (emphasis added).

Here, Plaintiff fails to allege a cognizable claim that removal from her research position due to a grant writing requirement constitutes an adverse employment action or is pretextual, where she also pleads that she has drafted grants all along. Plaintiff simply cannot plausibly allege that removal from "meaningful research responsibilities", which necessarily require grant funding, constitutes a retaliatory adverse employment action. This is particularly true where Plaintiff alleges that she was "happy to continue writing grants" and even "submitted a grant proposal in 2021" following the 2019 meeting where she herself announced she wished to develop a succession plan in part to ensure continuation of the exact grant writing process she alleges was not part of her job duties. *See* Pl's Compl. ¶¶ 22, 25,

7

27. As such, Counts II-IV of Plaintiff's Complaint should be dismissed with prejudice.

### C.      Plaintiff Fails to Plead a Plausible Claim of CEPA Where She Did Not Specify Any Law that Rowan Allegedly Violated.

Plaintiff has not presented any case law to support a prima facie claim that she reasonably believed that Defendants violated any law or policy, or a mandate of public health, safety, or welfare, or protection of the environment. *See Dzwonar v. McDevitt*, 177 N.J. 451, 462-463 (2003). She only alleges harm to herself, which does not support a CEPA claim.

In *Dzwonar*, the Court found that the plaintiff failed to establish a CEPA claim regarding alleged violations of the Labor Management Reporting Disclosure Act, where her dispute actually concerned an alleged violation of union bylaws which are not a "law, rule or regulation" under CEPA. *Id.* at 468-469. Here, Plaintiff's Complaint is unclear as to what law, rule, or regulation has allegedly been violated, and how such alleged violation relates to any negative employment actions. Her case is even further afield from CEPA than *Dzwonar*.

Plaintiff also cites to *Estate of Roach v. TRW*, however that case is factually distinguishable. In *Estate of Roach*, the plaintiff uncovered alleged illegal activities of a coworker, including, *inter alia*, the following: filing of a false expense report, false timecards, and the failure to disclose a conflict of interest between a company that their company considered acquiring, including allegations of kick-back

8

payments should the acquisition took place. When the plaintiff reported his findings to a supervisor, his supervisor indicated that he was displeased with the plaintiff, and the plaintiff was thereafter laid off. 164 N.J. 598, 604-606 (2000). These facts are completely distinct from the present case. Whereas the plaintiff in *Estate of Roach* alleged harms that implicate other coworkers and misbehavior that implicate company interests, Pruchno does not allege harms by Defendants that implicate anyone but herself.

Nor has Plaintiff pled any cognizable facts that demonstrate animus based on age. *See also Teglar v. Global Spectrum, Inc.* (finding that several incidents involving complaints connoting sexual harassment, gender-based harassment, racial preferences in scheduling, and racial discrimination in hiring, taken in the aggregate, would allow a reasonable person in the plaintiff's position to believe that there was a violation of the NJLAD in the workplace, where "there was evidence that the plaintiff could have reasonably believed that African-American employees were treated differently than white employees under the NJLAD by complaints, coupled with the plaintiff's own experience of another employee expressing he did not wish to hire any more African-Americans."). 291 F. Supp .3d 565, 584-585 (D.N.J. 2018). In fact, Pruchno herself pleads that she was openly discussing her age and retirement with her supervisors, and they were all working on transition plans related to same. Facially, nothing about that can be discriminatory.

9

Put simply, Plaintiff's scattered and incoherent concerns merely implicate her own private interests, and do not touch upon public concerns. Unlike *Teglar* and *Estate of Roach*, Plaintiff's allegations do not rise to the level of a prima facie CEPA claim. As such, her CEPA claim must fail. *See Mehlman v. Mobil Oil Corp.*, 153 N.J. 163, 188 (1988). For this reason, Count IV of the Third Amended Complaint should be dismissed with prejudice.

**D.  Plaintiff Fails to Plausibly Plead a Claim of Aiding and Abetting Because She Has Failed to Specify Particular Discriminatory Conduct on the Part of Individual Defendants.**

Lastly, Plaintiff fails to substantiate a claim of "aiding and abetting" by making blanket statements regarding individual defendants' duties. Plaintiff has not pled any facts that could show that the individual defendants acted "in furtherance of the discrimination." *Failla v. City of Passaic*, 146 F. 3d 149, 159 (3d Cir. 1998). Rather, Plaintiff simply avers that the individual defendants oversaw personnel decisions and salary decisions, but does not allege any particular discriminatory conduct. *See* Pl's Compl. ¶¶ 1-11.

Plaintiff again cites unrelated caselaw that fail to support her claims. Specifically, she references *Hurley v. Atlantic City Police Dep't*, 174 F. 3d 95 (3rd Cir. 1999) for the contention that "human resources involvement" can constitute discriminatory action and support an aiding and abetting claim. However, *Hurley* stands for no such proposition. Rather, in *Hurley*, a case that did not involve HR

10

personnel, and furthermore the Third Circuit ruled that substantial assistance in the harassment is necessary to find aiding and abetting. *Id.* at 102. The Court also found that a nonsupervisory employee could not be liable for aiding and abetting, even if he affirmatively harassed the plaintiff. *Id.* at 103. *Id.* at 129. *Hurley* is of no moment here.

Furthermore, Plaintiff's Third Amended Complaint fails to allege any facts that would suggests a discriminatory state of mind on the part of any individual defendant. *See Jones v. Jersey City Med. Ctr.*, 20 F. Supp. 2d 770, 775 (D.N.J. 1998) (finding that the plaintiff did not allege or show a link between the alleged discriminatory acts and the plaintiff's discharge); see also *Bendetsen v. United Airlines, Inc.*, No. 23-01553 (JXN) (MAH), 2025 WL 942963, at *7 (D.N.J. March 26, 2025) (granting a motion to dismiss the plaintiffs' action predicated on alleged discriminatory termination from employment, where "there are no facts connecting [the employer's] actions with disparate treatment based on age animus."). Here, Plaintiff has similarly pled no facts that would substantiate a claim of such nexus between the alleged discriminatory acts and any adverse employment consequences.

Put simply, Plaintiff's aiding and abetting claim must fail where Plaintiff fails to specify how each individual defendant was involved in any alleged improper misconduct. For these reasons, Count V of Plaintiff's Third Amended Complaint should similarly be dismissed with prejudice.

11

## III.    CONCLUSION

For all of the reasons referenced herein, as well as those brought forth in Defendants' Moving Brief, Defendants respectfully request that this Court grant their Motion in its entirety, and dismiss Plaintiff's Third Amended Complaint with prejudice.


Dated:  August 22, 2025                      Respectfully submitted,

                                             **SAUL EWING LLP**

                                             By: */s/James A. Keller*
                                             James A. Keller (Attorney ID:
                                             #020991996)
                                             Katherine Ellen Chrisman (Attorney
                                             ID: #332042022)
                                             650 College Road East, Suite 4000
                                             Princeton, NJ 08540-6603
                                             T: (609) 452-3100
                                             F: (609) 452-3122
                                             james.keller@saul.com
                                             katherine.chrisman@saul.com