## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **RACHEL PRUCHNO,** | **Case No. 24–cv–06619–ESK–EAP** |
| **Plaintiff,** |  |
| v. |  |
| **ROWAN UNIVERSITY,** *et al.*, | **OPINION** |
| **Defendants.** |  |

**KIEL, U.S.D.J.**

Plaintiff Rachel Pruchno had a long and successful career as a professor at Rowan University (Rowan).   As she was nearing retirement, Pruchno tried to develop a succession plan with Rowan to maintain future grant funding for her department.   Rowan did not fund such a plan, and later demoted, and eventually terminated Pruchno.   Pruchno argues that Rowan's stated reasons for firing her were merely to cover the underlying discrimination against her based on her age and that Rowan punished her for filing complaints and seeking legal redress for perceived wrongs.

Because plaintiff fails to adequately link some of defendants' actions to her alleged harms, defendants' motion to dismiss will be **GRANTED** in part and **DENIED** in part.

## I.    FACTUAL BACKGROUND[1]

Pruchno was a tenured professor of medicine at Rowan at its Rowan-Virtua School of Osteopathic Medicine (School of Medicine).   (Compl. ¶¶ 1, 13.)

---

[1] The facts are taken from Pruchno's third amended complaint (Complaint) (ECF No. 23 (Compl.)), which is the operative complaint.

She began her employment in 2004 as director of research for the Center for Aging, now known as the New Jersey Institute for Successful Aging (NJISA). (*Id.* ¶ 13.)   Pruchno alleges that she maintained a highly productive academic career, securing over $6,000,000 in grant funding, publishing more than 150 peer-reviewed articles, and receiving consistently positive performance evaluations.    (*Id.* ¶ 17.)

In January 2019, at age 65, Pruchno initiated discussions with Rowan leadership regarding succession planning, citing her anticipated retirement and the long-term nature of grant writing and the lifespan of funded research. Pruchno proposed hiring a successor whom she could train to assume responsibility for future grant writing.  (*Id.* ¶¶ 19, 20.)   Defendant Thomas Cavalieri, then dean of the School of Medicine, declined to allocate funding for such a position.   (*Id.* ¶ 23.)

Following that decision, Pruchno and her then-department chair developed a revised work plan that emphasized scholarly publications and support for other faculty members' grant-writing efforts, rather than Pruchno serving as a principal grant applicant.  (*Id.* ¶ 24.)   Pruchno alleges that she adhered to this plan, although she continued to submit grant proposals when feasible.   (*Id.* ¶ 25.)

In June 2023, Pruchno was called to a meeting with several Rowan officials, including interim dean Richard Jermyn and human resources personnel.  (*Id.* ¶ 30.)   At that meeting, Pruchno was informed that her position as director of research would be eliminated, her title would be changed to professor of basic science, and her salary would be reduced by more than 30%. (*Id.* ¶¶ 30, 31.)   The changes were to take effect about eleven days later, on July 1, 2023.   (*Id.* ¶¶ 32, 33.)

Defendants allegedly justified these changes because Pruchno was no longer applying for grants.  Pruchno contends that this explanation was

pretextual, asserting that grant writing had never been a formal requirement of her position and that her reduced grant activity resulted from Rowan's earlier refusal to support succession planning.   (*Id.* ¶¶ 34, 35, 37.)

Pruchno thereafter lodged internal complaints and, through counsel, challenged her demotion and salary reduction.   (*E.g.*, *id.* ¶ 42.)   In September 2023, she met with defendant Anthony Lowman, Rowan's provost, who expressed surprise at the decision and indicated that he would investigate the matter.   (*Id.* ¶ 43.)

In October 2023, Rowan offered Pruchno a temporary restoration of her salary in exchange for signing a release of age-related claims.   (*Id.* ¶¶ 44, 45.) Pruchno declined the offer.   (*Id.* ¶ 47.)   Pruchno subsequently filed grievances through her union, the American Association of University Professors, and lodged complaints with the Equal Employment Opportunity Commission (EEOC) and the New Jersey Division on Civil Rights (NJDCR).   (*Id.* ¶¶ 48, 50, 51.)

Pruchno alleges that, following these protected activities, defendants engaged in a series of retaliatory actions.   These actions included relocating Pruchno's office to a storage space without windows or ventilation, removing her furniture, and requiring her to attend grievance proceedings in person despite her Florida residency.   (*Id.* ¶¶ 49, 53, 66.)

On May 29, 2024, Pruchno filed the instant lawsuit.   (*Id.* ¶ 59.)   In August 2024, Pruchno was assigned to teach an in-person problem-based learning course for medical students.   (*Id.* ¶¶ 60, 61.)   Pruchno alleges that she lacked the qualifications to teach the course and objected to the assignment on ethical grounds.   (*Id.* ¶ 62.)

Following her refusal to teach the course, defendants initiated disciplinary proceedings, charging Pruchno with job abandonment and threatening

3

termination.   (*Id.* ¶ 63.)   A grievance hearing officer ultimately concluded that Pruchno had abandoned her position.   (*Id.* ¶ 68.)

Pruchno further alleges that, in December 2024, defendants terminated her employment, cut off her access to her Rowan email account, and failed to provide necessary information regarding benefits.   (*Id.* ¶¶ 70, 72, 73.)   She contends that these actions were taken in retaliation for her complaints of discrimination and refusal to engage in conduct she believed to be unethical. (*Id.* ¶ 70.)

## A.    PROCEDURAL HISTORY

On May 29, 2024, Pruchno commenced this action against Rowan, and defendants Keith Burkhardt, Thomas Cavalieri, D.O., Richard Jermyn, D.O., Anthony Lowman, Ph.D., Henry Oh, Kevin Overbeck, D.O., and several fictitious and unnamed defendants (collectively Individual Defendants), before the Superior Court of New Jersey, Law Division, Camden Vicinage. (ECF No. 1 ¶ 1.)[2]

Pruchno amended her state-court complaint on May 30, 2024, and defendants filed a timely notice of removal on May 31, 2024.   Pruchno filed the operative third amended complaint (Complaint) on May 5, 2025 (*see* Compl.).

Pruchno asserts claims for: (1) age discrimination under the New Jersey Law Against Discrimination   (NJLAD); (2) for pre-termination retaliation under the NJLAD; (3) retaliatory termination under the NJLAD; (4) violation of the New Jersey Conscientious Employee Protection Act (NJCEPA); and (5) aiding and abetting the NJLAD violations.

Defendants filed a motion to dismiss the Complaint (Motion) (ECF No. 30 (Mot.)), along with a brief in support of the Motion (ECF No. 30–1 (Defs' Br.).).

---

[2] *See Pruchno v. Rowan University, et al.*, CAM–L–001645–24 (N.J. Sup. Ct. Law Div. Camden Cnty.).

Pruchno filed a brief opposing the Motion. (ECF No. 33 (Opp'n Br.).) Defendants filed a reply in further support of their Motion. (ECF No. 37 (Reply Br.).)

## II.   STANDARD

### A.   Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim under Rule 12(b)(6), courts must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. *Makky v. Chertoff*, 489 F. Supp. 2d 421, 429 (D.N.J. 2007). A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Even post-*Twombly*, it has been noted that a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).

In reviewing the sufficiency of a complaint, a court must take three steps. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[A] complaint's allegations of historical

fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings." *Connelly*, 809 F.3d at 790.

## III.  DISCUSSION

### A.    NJLAD Age Discrimination (Count I)

Under the NJLAD, it is unlawful for employers to discriminate against an individual with respect to the terms and conditions of their employment based on a protected characteristic, such as race, religion, age, sex and disability. N.J. Stat. Ann. §10:5–12(a).   To establish a *prima facie* case of discrimination under the NJLAD, a plaintiff must show that: "(1) the plaintiff was a member of a protected class, (2) the plaintiff was qualified for the position, (3) the plaintiff suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination." *D'Ambrosio v. Crest Haven Nursing & Rehab. Ctr.*, 755 F. App'x 147, 151–52 (3d Cir. 2018).   The test is "flexible and must be tailored to fit the specific context in which it is applied." *Sarullo v. U.S.P.S.*, 352 F.3d 789, 798 (3d Cir. 2003).

It is undisputed that Pruchno, who was at least 65 years old at the time of the events, was a member of a protected class based on her age.   (Compl. ¶ 19.) The parties do not dispute that she was qualified to hold her position as a professor at Rowan and director of research for NJISA.[3]   And the parties do not dispute that Pruchno's loss of title and 30% pay cut were adverse employment actions.   Therefore, the only dispute is whether Pruchno's allegations support an inference of discriminatory intent.

---

[3] Defendants argue in their Motion that "[Pruchno] has not alleged any facts … that would substantiate that [she] was performing at a level that met her employer's legitimate expectations," (Def's Br. p. 26.), but meeting expectations in teaching is not the same thing as having qualifications to teach.

Defendants argue that Pruchno "does not plead any direct evidence of discrimination" or "plead any other facts that would sufficiently correlate the elimination of her [d]irector position with her age, [or] her declaration of an intention to retire." (Defs' Br. p.17.) Pruchno counters that she "clearly pleads that [d]efendants' actions in selecting the one task she was exempted from performing because of her age as the criterion used to remove her from the position of Director can be viewed as reflecting a discriminatory animus." (Opp'n Br. p.19.) Defendants further argue that NJLAD claims of discriminatory termination based on age require a "contention that the employer sought someone else to perform the same work after [a] [p]laintiff left," and Pruchno's discrimination claim should be dismissed for failing to allege a comparator alone. (Reply Br. p.5.)

Defendants apply the wrong standard. Courts have frequently looked to allegations other than direct comparators to establish an inference of discrimination. "Even circumstantial-evidence cases do not always require an age gap or a direct replacement. The plaintiff can instead allege actions by an employer that, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (internal quotations omitted); *Sarullo*, 352 F.3d at 798 (noting how the Third Circuit had "explicitly rejected a requirement that a plaintiff prove he was replaced by someone outside the protected class to prove a *prima facie* case of discrimination").

Here, I find that—even without direct comparator evidence—Pruchno has pleaded facts sufficient to establish an inference of age discrimination. First, the Complaint alleges that Pruchno expressly raised her "advanced age" and anticipated retirement with Rowan leadership in connection with succession planning. (Compl. ¶ 19.) The Complaint further alleges that defendants later relied on Pruchno's reduced grant-writing activity to justify eliminating her

position and reducing her salary.   (*Id.* ¶ 34–36.)   These allegations plausibly link the proffered reason for the adverse action to age-related considerations.

Second, Pruchno alleges that defendants' stated justification was pretextual.   Specifically, she alleges that grant writing was not a formal requirement of her position and that her reduced grant activity resulted from an agreed-upon work plan developed after Rowan declined to fund a successor. (*Id.* ¶ 35.)   She further alleges that defendants nevertheless "chose this particular reason … tied to Dr. Pruchno's age … in order to discriminate against [Pruchno] because of her age."   (*Id.* ¶ 36.)   At this stage, such allegations of pretext, combined with the surrounding factual context, are sufficient to support a reasonable inference of discriminatory intent.   *See Martinez*, 986 F.3d at 266.

Third, Pruchno alleges that defendants offered her a temporary restoration of salary conditioned on her execution of a release of age-related claims, which she characterizes as evidence that defendants recognized potential age discrimination exposure.   (*Id.* ¶¶ 44–46.)   While not dispositive, this allegation contributes to the overall plausibility of her claim.

Taken together, these allegations are sufficient to nudge Pruchno's claim across the line from conceivable to plausible.   Accordingly, the Motion will be denied as to Count I.

### B.   NJLAD Retaliation

The NJLAD also makes it illegal "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has … filed a complaint, testified or assisted in any proceeding under this act."   N.J. Stat. Ann. § 10:5–12(d).

To establish a retaliation claim under the NJLAD, a plaintiff must demonstrate: (1) that she engaged in a protected activity known to the employer; (2) that she suffered an adverse employment action; and (3) that

8

there was a causal connection between the protected activity and the adverse employment action.  *Battaglia v. United Parcel Serv., Inc.*, 70 A.3d 602, 619 (N.J. 2013); *see also Ogunbayo v. Hertz Corp.*, 542 F. App'x 105, 106 (3d Cir. 2013); *Gaines v. United Parcel Serv., Inc.*, No. 13–3709, 2014 WL 1450113, at *4 (D.N.J. Apr. 14, 2014).

Pruchno alleges retaliation both for events prior to her termination (Count II) and for retaliatory termination (Count III).   I address each in turn.

### 1.    Pre-Termination Retaliation (Count II)

As an initial matter, it is undisputed that Pruchno engaged in protected activities by, for example: sending a complaint through her attorney to the Rowan dean (Compl. ¶42); refusing the offer of a six-month sabbatical that was contingent on Pruchno signing a full waiver and release of any age-related claims against Rowan (*id.* ¶¶44–46); filing a grievance through her union for breach of contract (*id.* ¶48); filing an age discrimination complaint with the NJDCR and EEOC (*id.* ¶50); filing the instant lawsuit in state court (*id.* ¶59); and filing an additional grievance through her union following the September 4, 2024 letter to Pruchno charging her with discipline for job abandonment and threatening termination (Disciplinary Charges) (*id.* ¶65.).

Pruchno alleges that defendants directly retaliated against her for these actions "by evicting [her] from her usual office location, moving her to a storage closet office, confiscating her personal belongings, office furniture, and her ergonomic chair." (Compl. ¶94.) Pruchno further alleges that the Disciplinary Charges also constitute an adverse employment action.   (*Id.* ¶67.) Pruchno further alleges that Rowan assigned her to teach an in-person problem-based class to medical students and insisted Pruchno attend union grievance hearings in person—when Rowan knew Pruchno lived in Florida— was retaliation for filing the Complaint. (*See id.* ¶¶60, 66.)   Defendants

argue that none of these incidents constitutes an adverse employment action. (Defs' Br. pp. 18–20.)   Pruchno responds that the pre-termination adverse employment actions include more than just "the transfer of [Pruchno's] workspace to a storage closet," but also that "[d]efendants … unilaterally decided to remove her from her position and title of [d]irector AND decrease her salary by 30%."   (Opp'n Br. p. 20.)

"[A]n adverse employment action is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment."   *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (internal quotations omitted).   "[W]hether an action constitutes an adverse employment action depends on the attendant circumstances."   *Langley v. Merck & Co.*, 186 F. App'x 258, 261 n. 3 (3d Cir. 2006).   The Third Circuit has yet to decide whether transferring an employee to an undesirable office is—by itself—an adverse employment action, but other Circuits are split.   *See id.* (contrasting Seventh Circuit and Second Circuit opinions).   Likewise, notice of disciplinary charges is not necessarily an adverse employment action in and of itself.   *See Hargrave v. Cnty. of Atl.*, 262 F. Supp. 2d 393, 428 (D.N.J. 2003) (finding preliminary notice of disciplinary action by itself is not an adverse employment action).   But considering all attendant circumstances, (*see Langley*, 186 F. App'x at 261 n. 3), taken together with the other actions taken by defendants prior to termination, including, for example, the demotion and 30% pay cut (*see* Compl. ¶¶ 30–33), I find that Pruchno has shown enough to establish adverse employment actions.

As to the third prong, Pruchno alleges causation based on temporal proximity and an inference of retaliatory animus. "A plaintiff may demonstrate causation by showing: (1) a close temporal relationship between her report and discharge, or (2) that the proffered evidence, looked at as a whole, raises the inference of causation." *Nuness v. Simon & Schuster, Inc*, 221

F. Supp. 3d 596, 606 (D.N.J. 2016) (internal quotations and alterations omitted). When there is no close temporal proximity, courts consider the "circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015).

Pruchno alleges that the November 1, 2023 union grievance and November 17, 2023 age discrimination complaints to the NJDCR and EEOC were followed only in the next month (December 2023) by the forced office transfer. (Compl. ¶¶ 48, 50, 53.) Although a few weeks of temporal proximity, alone, may not be enough to establish causation, Pruchno also notes the November 20, 2023 letter from Rowan to Pruchno authorizing backpay but also confirming the loss of her director of research role. (Compl. ¶¶ 51, 52.) This "intervening antagonism" by Rowan sufficiently buttresses the connection between Pruchno's NJDCR/EEOC complaints and the office transfer. Likewise, Pruchno argues that the degrading nature of both: (1) the office transfer vis-à-vis her grievance and agency complaints; and (2) the Disciplinary Charges following Pruchno filing the Complaint in state court can create an inference of discriminatory animus. Added together, I find that Pruchno has sufficiently pled a causal link between her protected activity and the adverse employment actions to survive a motion to dismiss.

Accordingly, the Motion will be denied as to Count II.

### 2. <u>Retaliatory Termination (Count III)</u>

Defendants argue that Pruchno failed to allege facts showing that she was performing her job at a level that met her employer's legitimate expectations, that she failed to show that her termination was for reason other than "her

11

unwillingness to teach a clinical class to prospective medical professionals, and that she failed to allege that Rowan sought another person to perform the same work after she left.    (Defs' Br. p. 23.)

As an initial matter, defendants cite the wrong standard.    The elements they cite to are for *discriminatory* discharge, not *retaliatory* discharge.    (Defs' Br. p. 22 (citing *Clowes v. Terminix Int'l, Inc.*, 538 A.2d 784 (N.J. 1988).).    As such, there is no requirement that Pruchno show she was performing her job to defendants' expectations.

Here, as explained *supra*, Pruchno has shown she engaged in protected activities known to her employer.    There can be no question that terminating Pruchno's employment constitutes an adverse employment action.    And Pruchno has sufficiently alleged a causal connection between the protected activities and her termination.    (*See* Opp'n Br. p. 30.)    Specifically, Pruchno alleges an escalation of adverse events prior to termination, including: having "her role and title stripped, her salary significantly reduced, her office taken, her furniture taken … a brand new clinical course cast upon her, disciplinary actions, termination, [and] denial of access to her email." (*Id.*)    Pruchno further alleges that Rowan manufactured the teaching and grant-writing requirements as pretext to terminate Pruchno.    (*Id.*)    And Pruchno also raises the close temporal proximity between the hearing on her second union grievance and termination.    (*Id.* p. 26.)    Especially as defendants have not argued otherwise, even when given the opportunity in their reply, I find that— accepting the allegations in the Complaint as true—Pruchno has shown a reasonable inference of a causal link between her protected activities and ultimate termination.

Accordingly, the Motion will be denied as to Count III.

### C.     NJCEPA Retaliation (Count IV)

Pruchno alleges that she "filed multiple [union] grievances and objected [to] the 2024–2025 workplan" because it would require her to teach a clinical class she was not qualified to teach and that providing that "unqualified training" would "negatively impact public health and [the] safety of the state." (Compl. ¶ 108.)   Defendants argue that Pruchno: (1) has not alleged that defendants violated any rule, law, or policy that is "dangerous to the public health, safety, or welfare,"; (2) has not provided facts showing a causal connection between an adverse employment action and whistleblowing activity; and (3) that certain factual allegations are barred by the statute of limitations. (Defs' Br. pp. 25, 26.)

NJCEPA prohibits New Jersey employers from taking "retaliatory action" against an employee who objects to "any activity, policy or practice which the employee reasonably believes" is in violation of applicable law.   N.J. Stat. Ann. § 34:19–3(c)(1).   This law is intended to protect "whistle-blowers" who believe the organization is involved in illegal or unethical activity. *Lippman v. Ethicon, Inc.*, 119 A.3d 215, 224–25 (N.J. 2015). NJCEPA defines "[r]etaliatory action" to include "the discharge, suspension or demotion of an employee."   N.J. Stat. Ann. § 34:19–2(e).   "To prevail on a claim under this provision, a plaintiff must establish that (1) [she] reasonably believed that his employer's conduct was violating a law or rule or regulation promulgated pursuant to law, (2) [she] objected to the conduct, (3) an adverse employment action was taken against [her], and (4) a causal connection exists between the whistleblowing activity and the adverse employment action." *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 404 (3d Cir. 2007) (citing *Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003)); *see also Southward v. Elizabeth Bd. of Educ.*, No. 15–3699, 2017 WL 111924, at *4 (D.N.J. Jan. 11, 2017).

13

Pruchno satisfies the first prong.   In addition to showing the employer violated a law, rule, or regulation promulgated pursuant to law, a plaintiff may also show that the employer violated "a clear mandate of public policy concerning the public health, safety or welfare."   N.J. Stat. Ann. § 34:19–3c(3). Under the standard adopted by some lower courts, a whistleblower claim may survive when the plaintiff is mistaken as to whether the activity complained of actually occurred, but will not survive when the alleged activity does not violate the law or public policy.   *Dzwonar*, 828 A.2d at 901.   NJCEPA's goal is "not to make lawyers out of conscientious employees but rather to prevent retaliation against those employees who object to employer conduct that they reasonably believe to be unlawful or indisputably dangerous to the public health, safety or welfare."   *Mehlman v. Mobil Oil Corp.,* 707 A.2d 1000, 1015–16 (N.J. 1998). As such, "when a defendant requests that the trial court determine as a matter of law that a plaintiff's belief was not objectively reasonable, the trial court must make a threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff."   *Dzwonar*, 828 A.2d at 901.   Whether a plaintiff held such a belief and whether that belief was objectively reasonable are questions for a finder of fact.   *Id.* at 901–902.

Here, the Complaint alleges that plaintiff notified defendants of potentially unethical behavior by assigning her to teach a course she felt she was not qualified to teach, and that teaching that course could endanger public health and safety. (Compl. ¶ 108.) In particular, Pruchno "informed [d]efendants that, as a psychologist, she believed, and still believes, that it would be unethical for her to teach a clinical class to medical students."   (*Id.* ¶ 62.)   I find that Pruchno has shown a nexus between Rowan requiring her to

14

teach a clinical class to medical students to the public safety concern to ensure qualified instructors are training future physicians.[4]

Pruchno also satisfies the second prong (objecting to Rowan's conduct) by filing her second union grievance in response to Rowan's threatened termination for allegedly abandoning her job. (Compl. ¶¶ 63, 65.) The third (adverse employment action) and fourth prongs (causation) are also satisfied for the same reasons as explained for Count III above.

Accordingly, the Motion will be denied as to Count IV.

### D.      NJLAD – Aiding and Abetting (Count V)

The Complaint alleges that provost Anthony Lowman, dean Thomas Cavalieri, interim dean Richard Jermyn, chair Kevin Overbeck, associate vice president of human resources Henry Oh, and human resources director Keith Burkhardt "interfered with Pruchno's exercise and enjoyment of rights under the [NJ]LAD … and even if in part, eliminated her title, and reduced her salary by 30% due to [her] age." (Compl. ¶ 117.) Defendants argue that Pruchno fails to state an NJLAD aiding and abetting claim because Burkhardt and Oh are not "decision makers," (Defs' Br. p. 29), and because Lowman, Cavalieri, and Overbeck did not substantially assist with the alleged violations. (*Id.* pp. 29–31.)[5]

---

[4] I need not consider Pruchno's argument that the law or policy she believed defendants were violating was the NJLAD. (Opp'n Br. p. 28.) It "is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988); *see also Scott v. Cohen*, 528 F. Appx. 150, 152 (3d Cir. 2013) (holding that it is a basic principle that a complaint may not be amended by the briefs in opposition to a motion to dismiss). Plaintiff implicitly concedes that she did not plead a violation of the NJLAD as a basis for her NJCEPA claim. (*See* Opp'n Br. p. 28–29.) To proceed on the NJCEPA claim on that basis, plaintiff should move for leave to file an amended complaint or obtain a stipulation from defendants to do the same.

[5] The Motion does not seek dismissal of Count V as to Jermyn.

NJLAD does not impose liability on individuals as "employers," but individuals can be liable if they "aid, abet, incite, compel[,] or coerce the doing of any of the acts forbidden under this act, or … attempt to do so."   N.J. Stat. Ann. §10:5–12(e).   An individual cannot be liable "merely because they had some role, or knowledge[,] or involvement."   *Failla v. City of Passaic*, 146 F.3d 149, 159 (3d Cir. 1998).   "In order for a person to be individually liable under the LAD, [they] must actually intend to facilitate discrimination. … In addition, the aider and abettor must be actively involved in the discriminatory conduct." *Jones v. Jersey City Med. Ctr.*, 20 F. Supp. 2d 770, 774 (D.N.J. 1998).

"[I]n order to hold an employee liable as an aider or abettor, … (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of [their] role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation."   *Tarr v. Ciasulli*, 853 A.2d 921, 929 (N.J. 2004) (internal quotations omitted) (cited favorably by *Patti v. Ibarrondo*, No. 22–6365, 2023 WL 4927281, at *6 (D.N.J. Aug. 1, 2023)).

### 1.   Burkhardt and Oh

Defendants argue that Burkhardt and Oh cannot be liable for aiding and abetting because they are not decision-makers and only work in human resources. (Defs' Br. p.29.) Pruchno responds that human resources representatives can still be found liable when they engage in discriminatory practices.   (Opp'n Br. p.31.)

Defendants are right.   Pruchno has not shown that Burkhardt or Oh provided substantial assistance instead of merely being involved in the alleged discrimination.   In fact, the Complaint only alleges that Burkhardt and Oh attended the meeting where Pruchno was demoted and that Oh co-signed the

demotion letter. (Compl. ¶¶ 30, 39.) This knowledge and involvement is not enough. *See Failla*, 146 F.3d at 159.

### 2. Cavalieri, Overbeck, and Lowman

As for the other three, the Complaint alleges nothing against Cavalieri related to Pruchno's demotion and pay cut. Rather, he was only involved in denying Pruchno's succession plan. (Compl. ¶¶ 21–25.) Overbeck, like Burkhardt and Oh, only attended the demotion meeting. (*Id.* ¶ 30.) The rest of his involvement was in Pruchno's succession plan and work plan. As for Lowman, the Complaint only states that he signed the letter offering Pruchno the six-month sabbatical in exchange for a waiver of claims. (*Id.* ¶¶ 44–45.) Otherwise, the Complaint itself alleges that Lowman lacked knowledge of Pruchno's demotion. (*See id.* ¶ 43 (noting that "Provost Lowman said he was not even aware of the demotion").)

Pruchno has failed to establish that any Individual Defendant substantially assisted Rowan in violating the NJLAD. Accordingly, the Motion will be granted as to Count V except as to Jermyn.

## IV. CONCLUSION

Defendants' Motion is **GRANTED** in part and **DENIED** in part. An order accompanies this opinion.

_/s/ Edward S. Kiel_
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Date: April 28, 2026

17